## UNITED STATES BANKRUPTCY COURT

## DISTRICT OF IDAHO

| | |
|---|---|
| IN RE ) | |
| ) | Case No. 09-20178-TLM |
| STERLING MINING COMPANY, ) | |
| ) | Chapter 11 |
| ) | |
| Debtor in Possession. ) | |
| _____ ) | |

**MEMORANDUM OF DECISION
ON MOTION TO DISMISS**
_____

**INTRODUCTION**

Before the Court for decision is a motion under § 1112(b) to dismiss this chapter 11 case.[1] *See* Doc. No. 244 ("Motion to Dismiss"). The Motion to Dismiss was filed by Sunshine Precious Metals, Inc. ("SPMI") as a "creditor" and by American Reclamation, Inc. ("ARI") as a "stockholder." *Id.* at 1.

The Motion to Dismiss is opposed by the debtor in possession, Sterling Mining Company.[2] Though receiving service of the Motion to Dismiss and of a

---

[1] Unless otherwise indicated, all statutory references including those to chapters or sections are to the Bankruptcy Code, Title 11, U.S. Code §§ 101-1532.

[2] As in previous Decisions, the Court will refer to the pre-bankruptcy entity as "Sterling" and the post-bankruptcy entity as the "DIP" (debtor in possession). *See* § 1101(1).

MEMORANDUM OF DECISION (DISMISSAL) - 1

notice of hearing thereon, *see* Doc. No. 243, 245,[3] no other creditors or shareholders joined with SPMI and ARI in requesting dismissal. Nor did any other creditors or shareholders appear in support of that Motion at the scheduled hearing.[4]

As explained in the Court's prior Decisions, Sterling surrendered possession of the Sunshine Mine to SPMI in late February, 2009. However, the Motion to Dismiss focuses not on the Lease or the surrender of possession of the Leasehold but, instead, on the events surrounding Sterling's filing bankruptcy several days later on March 3, 2009.

In short, SPMI and ARI contend the corporation was not properly authorized to file bankruptcy, while the DIP contends that the corporation's filing was authorized. Specifically, the DIP asserts director and officer Roger Van Voorhees properly signed the petition, as the "authorized individual" on behalf of the company. This contention is premised on Sterling's board of directors passing a resolution on February 26, 2009, amending the corporation's bylaws to reduce the number of directors to one, and upon Van Voorhees becoming that sole

---

[3] Notice of the hearing on dismissal of a chapter 11 case must be given to all creditors, Fed. R. Bankr. P. 2002(a)(4), and to all equity security holders, Fed. R. Bankr. P. 2002(d). The certificate of service, Doc. No. 245, indicates compliance with these Rules.

[4] The United States Trustee ("UST") and SNS Silver Corp. declined at hearing to take a position on the Motion to Dismiss. Minco Silver Corp. and Alberta Star Development Corp. supported the DIP's opposition to the Motion.

MEMORANDUM OF DECISION (DISMISSAL) - 2

director after all other directors resigned. SPMI and ARI argue that the resolution to amend the bylaws was ineffective to alter the minimum number of directors required by Sterling's articles of incorporation, and that a quorum of such required directors did not meet and properly authorize the filing of the bankruptcy case.

SPMI filed a motion, substantially identical to the instant Motion to Dismiss, on June 4, 2009. *See* Doc. No. 163 ("First Dismissal Motion").[5] SPMI asked that the First Dismissal Motion be heard on shortened notice. Doc. No. 169. The Court denied the request to shorten the required notice, vacated a hearing noticed on the First Dismissal Motion for June 22, and indicated that SPMI could properly notice the matter for August 4. *See* Doc. Nos. 191 (Decision), 192 (Order).

Roughly one month later, on July 9, 2009, the Motion to Dismiss was filed by SPMI, as a "creditor," and by "Stockholder, American Reclamation [50,000 shares]," both represented by the same attorneys, Murphy Bantz & Bury P.S. and C.K. Powers P.S. *See* Doc. No. 244 at 1.[6]

ARI is shown on the list of "equity security holders" filed by the DIP. *See* Doc. No. 21 at 4 (listing "405 Investments LP" and ARI at the same address, with

---

[5] ARI was not a party to the First Dismissal Motion.

[6] SPMI, through these attorneys, has been an active litigant since the commencement of this case. All appearances by its counsel have been solely for SPMI. *See*, *e.g.*, Doc. Nos. 36, 42, 158, 160. ARI did not file a notice of appearance until *after* the Motion to Dismiss was taken under advisement. *See* Doc. No. 291 (filed August 6, 2009).

MEMORANDUM OF DECISION (DISMISSAL) - 3

each holding 50,000 shares).[7]  The DIP's list of holders of common stock runs 63 pages, lists 775 holders, and discloses a total of 39,664,892 shares held.

The Motion to Dismiss was heard on August 4 and 5, 2009, and taken under advisement.  This Decision constitutes the Court's findings and conclusions.  Fed. R. Bankr. P. 7052, 9014.

**FACTS**

Sterling's articles of incorporation were amended in 1952 to provide, in Article V:

> The number of the Board of Directors of the corporation shall not be less than three (3) directors, the number of which shall be designated by the By-laws of the corporation.

Ex. 250 at 11.  Nothing in the evidence suggests any subsequent amendment to this provision.

The bylaws of Sterling, as amended and restated in 2006, provide under Article IV, dealing with directors:

> **Section 4.2  Variable Range-Size Board: Qualifications.**  Unless the Articles of Incorporation provide otherwise, the authorized number of directors of the Corporation may range between a minimum of three (3) and a maximum of seven (7), and may be fixed or changed from time to time, within the minimum and maximum, by the Board of Directors by resolution fixing or changing such number.

Ex. 252 at 6.  The bylaws further provide in § 4.8:

---

[7] A list of equity security holders is required in chapter 11 cases.  Fed. R. Bankr. P. 1007(a)(3). "Equity security" means a share in a corporation, § 101(16)(A), and "equity security holder" is the holder of the same, § 101(17).

MEMORANDUM OF DECISION (DISMISSAL) - 4

> **(1) Quorum.** Unless the Articles of Incorporation or these Bylaws require a greater number or unless otherwise specifically provided by the IBCA, a quorum of the Board of Directors consists of (a) a majority of the fixed number of directors if the Corporation has a fixed board size or (b) a majority of the number of directors prescribed, or if no number is prescribed the number in office immediately before the meeting begins, if the Corporation has a variable-range size board.

*Id.* at 8.[8]

On February 26, 2009, Sterling's board of directors passed a resolution "to amend the bylaws of the company to allow for one member of the Board of Directors." Ex. 136.[9] Also at this meeting, Sterling directors Ryan, Shiell, Stephan, Grundman and Demotte resigned. *Id.*

On March 3, 2009, a resolution was adopted by Sterling's board of directors, then consisting of Van Voorhees alone, authorizing the filing of the bankruptcy petition. Ex. 138.

**DISCUSSION AND DISPOSITION**

On these facts, a series of questions is presented.

**1.    Was the filing of bankruptcy properly authorized?**

The Bankruptcy Code does not set forth specific requirements for a

---

[8] The reference here to the IBCA is to the Idaho Business Corporations Act. *See* Ex. 252 at 4, § 3.5 (providing definition).

[9] There are two exhibits that purport to be minutes of the February 26, 2009 meeting of the board. *See* Exs. 136, 137. The second is similarly phrased in regard to the resolution. *See* Ex. 137 ("to amend bylaws to allow Sterling to operate with one Officer and Director."). Testimony did not clarify the reason for the two versions. However, the testimony was clear that the board so amended the bylaws.

MEMORANDUM OF DECISION (DISMISSAL) - 5

corporation to file bankruptcy, other than requiring the petition to be "voluntary." *See* § 301; *In re Quarter Moon Livestock Co.*, 116 B.R. 775, 778, 90 I.B.C.R. 246, 248 (Bankr. D. Idaho 1990). This Court therefore looks to "the instruments of the corporation and applicable state law" to determine whether a corporate bankruptcy petition was authorized. *Quarter Moon Livestock*, 116 B.R. at 778. *See generally* 2 *Collier on Bankruptcy* ¶ 301.04-[7][b] (Alan N. Resnick & Henry J. Sommer, eds., 15th ed. rev. 2008).

There is no question that a quorum of Sterling's board of directors met and a majority thereof approved the amendment of the bylaws to reduce the number of directors to one.[10] And an Idaho corporation may properly have a single-director board. *See* Idaho Code § 30-1-803(1) (providing that "A board of directors must consist of one (1) or more individuals[.]"). However, the entirety of this statutory provision is important:

> (1) A board of directors must consist of one (1) or more individuals, *with the number specified in or fixed in accordance with the articles of incorporation or bylaws.*

I.C. § 30-1-803(1) (emphasis added). Changes in the required number of directors

---

[10] *See* Ex. 252 at 8, § 4.8(1)(b) (defining quorum). Exhibit 136 indicates that six directors (Shiell, Ryan, Van Voorhees, Stephan, Grundman and Demotte) commenced the meeting and that four (Shiell, Stephan, Grundman and Demotte) resigned after the resolution on board size was passed. It discusses Ryan's resignation as President and CEO, but not as a director. Exhibit 137 is slightly different. It indicates the same six directors commenced the meeting, that Ryan resigned as director, and then the resolution on board size passed with "none opposed" and no abstentions, suggesting five directors approved. Then Grundman's and Shiell's resignations are accepted. This exhibit is silent as to Stephan's and Demotte's resignations.

MEMORANDUM OF DECISION (DISMISSAL) - 6

is similarly subject to the corporation's articles of incorporation and its bylaws:

> (2) The number of directors may be increased or decreased from time to time by amendment to, or in the manner provided in, the articles of incorporation or the bylaws.

I.C. § 30-1-803(2).

Sterling's articles of incorporation establish that the board "shall be not less than three (3) directors, the number of which shall be designated by the By-laws[.]" Ex. 250 at 11. The bylaws echo this minimum, and establish a "range" for the number of directors on its board, which must be "between a minimum of three (3) and a maximum of seven (7)." Ex. 252 at 6. The bylaws further provide that the number "may be fixed or changed from time to time, *within the minimum and maximum*, by the Board of Directors by resolution[.]" *Id.* (emphasis added).

The resolution passed by Sterling's board on February 26 was inconsistent with the existing bylaws in that it exceeded the bylaws' range restriction (*i.e.*, "within the minimum and maximum"). More importantly, and even if that resolution is read to eliminate the bylaws' required range as well as setting a new number of required directors, that resolution was inconsistent with the articles of incorporation that mandate a minimum of three directors.

That the unamended articles of incorporation require a minimum of three directors is fatal to the attempted change. This conclusion is impelled by applicable statute. Idaho Code § 30-1-206(2) limits the reach of the bylaws,

MEMORANDUM OF DECISION (DISMISSAL) - 7

providing:

> (2) The bylaws of a corporation may contain any provision for managing the business and regulating the affairs of the corporation *that is not inconsistent with* law or *the articles of incorporation*.

Idaho Code § 30-1-302(3) similarly provides a limit on amending bylaws:

> *Unless its articles of incorporation provide otherwise*, every corporation . . . has the same powers as an individual to do all things necessary or convenient to carry out its business and affairs, including without limitation power:
> . . .
> (3) To make and amend bylaws, *not inconsistent with its articles of incorporation* or with the laws of this state, for managing the business and regulating the affairs of the corporation[.]

Finally, Idaho Code § 30-1-801 addresses the duties of the board of directors:

> (2) All corporate business shall be exercised by or under the authority of, and the business and affairs of the corporation managed by or under the direction of, its board of directors, *subject to any limitation set forth in the articles of incorporation* or in an agreement authorized under section 30-1-732, Idaho Code.

Under these several statutes, Sterling's amendment of the bylaws was inconsistent with the articles of incorporation and thus ineffective.

There is no evidence presented regarding any attempt of Sterling to amend the articles of incorporation to remove the minimum number of three directors. *See* Idaho Code §§ 30-1-1001, 30-1-1003, 30-1-1005 (addressing amendment of articles of incorporation).

When Sterling filed its bankruptcy petition, its articles of incorporation required a minimum of three directors. The February 26 amendment of the bylaws

MEMORANDUM OF DECISION (DISMISSAL) - 8

did not change or eliminate this requirement. Under these circumstances, the sole then-remaining director of the company (Van Voorhees) could not act for the board. *See generally* 15A William Meade Fletcher, *Fletcher Cyclopedia of the Law of Corporations* § 7631.39 (rev. ed. 2008) ("For the bankruptcy filing to be properly authorized, the board must have been lawfully constituted and acting lawfully when it authorized the filing of a bankruptcy petition. Thus, absence of a quorum may render the authorization invalid.") (internal footnotes, collecting cases, omitted).[11]

The single-director resolution approving the filing of the petition was not effective under "the instruments of the corporation and applicable state law." *Quarter Moon Livestock*, 116 B.R. at 778. As a result, the Court concludes that the bankruptcy petition was not authorized.[12]

---

[11] When all other directors resigned, leaving Van Voorhees as the sole director, an alternative approach was apparently available under Sterling's corporate instruments. Its bylaws provide:

> Section 4.6. *Newly Created Directorships and Vacancies.* Unless the Articles of Incorporation provide otherwise, . . . any vacancies on the Board of Directors resulting from . . . resignation . . . may be filled by the affirmative vote of a majority of the remaining directors then in office even if they constitute fewer than a quorum of the authorized Board of Directors, or may be filled by the shareholders.

Ex. 252 at § 4.6. As the remaining director, Van Voorhees might have voted to add directors to fill vacancies. At least two additional directors would be needed to result in the required minimum of three directors, and two of the three directors would then constitute a quorum.

[12] *See*, *e.g.*, *In re Autumn Press, Inc.*, 20 B.R. 60, 62 (Bankr. D. Mass. 1982) (dismissing case in which single director authorized filing but where debtor corporation's bylaws and applicable state law required a minimum of three directors to act).

MEMORANDUM OF DECISION (DISMISSAL) - 9

**2.      Does lack of authorization generally require dismissal?**

Bankruptcy Code § 1112(b), requires a showing of "cause" to dismiss a chapter 11 case, though the specific examples of cause listed in § 1112(b) are non-exclusive. *In re Jayo*, 06.3 I.B.C.R. 71, 74, 2006 WL 2433451, at *5-6 (Bankr. D. Idaho 2006). This Court has previously relied upon § 1112(b) to dismiss unauthorized corporate filings. *In re Council Golf & Country Club, Inc.*, 82 I.B.C.R. 207, 207-08 (Bankr. D. Idaho 1982) (dismissing petition filed without corporate authority); *see also In re Real Homes, LLC*, 352 B.R. 221, 225, 228 (Bankr. D. Idaho 2005) (dismissing petition filed without authority of LLC and noting that "[i]t is generally accepted that a bankruptcy case filed on behalf of an entity by one without authority under state law to so act for that entity is improper and must be dismissed.").

Such an approach and result is consistent with *Price v. Gurney*, 324 U.S. 100 (1945), which was cited by this Court in *Real Homes*, 352 B.R. at 225. The Supreme Court in *Price* held that a federal bankruptcy court has no power to entertain a voluntary petition for bankruptcy filed on behalf of a corporation by one then without authority under state corporate law to file for the corporation and "institute the proceedings." *Id.* at 106. The consequence is that the court "has no alternative but to dismiss the petition." *Id.* *Price* is the primary authority relied on

MEMORANDUM OF DECISION (DISMISSAL) - 10

by SPMI and ARI.[13]

The case law indicates, as a general rule, that improperly authorized bankruptcy petitions must be dismissed.

### 3. Who may raise the question of proper corporate authorization?

SPMI is a creditor of Sterling and this estate. *See* § 101(10) (defining "creditor" as an entity with a claim); § 101(5) (defining "claim"). SPMI identifies itself as a "creditor" in the Motion to Dismiss, *see* Doc. No. 244 at 1, and in briefing, *see* Doc. No. 266 at 1. SPMI has at no time in this case or in connection with this Motion alleged that it is a shareholder. In fact, its brief in support of the Motion to Dismiss expressly asserts "Sunshine is not a stockholder[.]" Doc. No. 266 at 11.[14]

In *Still v. Fundsnet, Inc. (In re Southwest Equipment Rental)*, 152 B.R. 207 (Bankr. E.D. Tenn. 1992), certain preference defendants contended that the

---

[13] *See*, *e.g.*, Doc. No. 266. SPMI also emphasized, throughout its briefing and argument, that *Price* compels a conclusion that the Court lacked jurisdiction from the very outset of this case and that the absence of jurisdiction requires dismissal. However, SPMI, as plaintiff against the DIP and Minco Silver in Adv. Proc. No. 09-07025-TLM, alleged that this Court had jurisdiction under 28 U.S.C. § 1334, that the matter there presented was a "core proceeding" under 28 U.S.C. § 157(b), that venue was proper under 28 U.S.C. § 1409, and that the Court had "personal jurisdiction" over the DIP. *Id.* at Doc. No. 1 (complaint, filed June 9, 2009). This was, incidentally, after the First Dismissal Motion, Doc. No. 163, was filed on June 4.

[14] The Court notes that the Lease provides for delivery of Sterling stock to SPMI. *See* Ex. 100 at § 9.3. But nothing has been presented by way of evidence, or urged in argument, to suggest that SPMI was a shareholder at the time of the filing of the petition for relief on March 3, 2009. Nor was SPMI located in the Court's review of the DIP's list of equity security holders, Doc. No. 21. And, as noted, SPMI denies being a stockholder.

MEMORANDUM OF DECISION (DISMISSAL) - 11

debtor's case had to be dismissed because the petition was not properly authorized by the debtor's board of directors, premising that argument on how many directors the debtor was required to have and whether proper procedures were followed by the directors. The preference defendants were not shareholders of debtor, and were "merely creditors." 152 B.R. at 208.

After noting that the Bankruptcy Code changed the procedure for "adjudicating" debtors that existed under the Bankruptcy Act of 1898, the Court stated:

> This change in procedure does not undercut the Supreme Court's holding under the earlier law that creditors do not have standing to contest a corporation's voluntary bankruptcy on the ground that the directors did not authorize it.
>
> > Even if the action of directors authorizing the filing of a voluntary petition . . . were in excess of the authority conferred, or otherwise invalid, creditors could not for that reason attack the consequent adjudication. The question is purely one of the internal management of the corporation. Creditors have no standing to plead statutory requirements not intended for their protection. If the stockholders' rights had been infringed, and they chose to waive them, a creditor could not assert them in opposing an adjudication.
>
> *Royal Indemnity Co. v. American Bond & Mortgage Co.*, 289 U.S. 165, 171, 53 S.Ct. 551, 554, 77 L.Ed. 1100 (1933). The Supreme Court's later decision in *Price v. Gurney* did not change this rule. *Price v. Gurney*, 324 U.S. 100, 65 S.Ct. 513, 89 L.Ed. 776 (1945).
>
> The Supreme Court's decision in *Royal Indemnity* was neither the first nor the last to reach the same result. *Chicago Bank of Commerce v. Carter*, 61 F.2d 986 (8th Cir. 1932); *In re Fox West Coast*

MEMORANDUM OF DECISION (DISMISSAL) - 12

>  *Theatres*, 25 F.Supp. 250 (S.D. Cal. 1936), *aff'd* 88 F.2d 212 (9th Cir.), *cert. den. Talley v. Fox Films Corp.*, 301 U.S. 710, 57 S.Ct. 944, 81 L.Ed. 1363, *reh. den.* 302 U.S. 772, 58 S.Ct. 7, 82 L.Ed. 598 (1937)[.]"

152 B.R. at 208.  The court in *Southwest Equipment Rental* concluded that the *Royal Indemnity* rule retained validity even though the Code allowed a "party in interest" to seek dismissal of a case under § 707(a), § 1112(b) and § 1208(c).  *Id.* at 209.  It stated:

> A creditor is a party in interest.  Failure of the directors to authorize a corporation's bankruptcy filing is also cause for dismissal of a bankruptcy case.  It seems to follow that a creditor can obtain dismissal of a corporation's bankruptcy on the ground that the directors did not authorize it in accordance with state law or the corporation's by-laws.
>
> However, the law was essentially the same when the Supreme Court made its decision [in *Royal Indemnity*].  The failure of the directors to properly authorize the bankruptcy filing was a ground for vacating an adjudication, but it was a ground that the lower courts and the Supreme Court denied to creditors.

*Id*.

*Southwest Equipment Rental* also rejected the idea that the grant of § 1109(b), stating that parties in interest and creditors "may raise and may appear and be heard on any issue" in a chapter 11 case, varied the result.  It found that "it would be stretching the meaning of § 1109 to say that it overruled the Supreme Court's decision.  The statute does not necessarily mean that every party in interest can obtain relief on every issue.  In other words, the right to raise an issue and to

MEMORANDUM OF DECISION (DISMISSAL) - 13

appear and be heard is not the same as standing." *Id.*[15]

The rationale for denying creditors standing to urge dismissal on the basis of inadequate corporate authorization was explained thus:

> The court believes that there is an underlying practical reason for the rule. A creditor usually does not move for dismissal of a bankruptcy case out of concern for the debtor or other creditors. . . . The defendants [here] want the bankruptcy case and this lawsuit dismissed to protect the [allegedly preferential] payments they received. They are not trying to protect the rights of shareholders or other creditors. They don't care.

*Id.* at 209-10.

The Court concludes, on the record presented and under these authorities, that SPMI lacks standing to urge the dismissal of this case on the ground that Sterling's board of directors did not properly authorize the same.

However, as a Sterling shareholder, ARI does have standing to challenge a bankruptcy petition filed on Sterling's behalf. *Id.*; *see also In re Hawaii Times Ltd.*, 53 B.R. 560 (Bankr. D. Haw. 1985); *In re Autumn Press,* 20 B.R. 60 (Bankr. D. Mass. 1982); *see generally* Hon. Joe Lee 2 *Bankruptcy Service, Lawyers Edition* § 13:16 ("Shareholder of debtor corporation has standing to challenge

---

[15] *Warth v. Seldin*, 422 U.S. 490, 498-99 (1975), held that standing embraces both "constitutional" and "prudential" elements, and that prudential standing includes the idea that a party must assert its own claims rather than those of another party. *See also Bennett v. Spear*, 520 U.S. 154, 162, 167-68 (1997) (same). This Court has previously recognized and applied these propositions. *See*, *e.g.*, *In re Wilhelm*, 407 B.R. 392, 398 (Bankr. D. Idaho 2009); *In re Sheridan*, 09.1 I.B.C.R. 24, 2009 WL 631355, at *2-3 (Bankr. D. Idaho Mar. 12, 2009); *In re Simplot*, 2007 WL 2479664, at *9-10 (Bankr. D. Idaho Aug. 28, 2007). The *Royal Indemnity* rule, which prohibits creditors from asserting rights or claims of shareholders, is consistent.

MEMORANDUM OF DECISION (DISMISSAL) - 14

corporate authorization for filing petition.").

### 4. Was the improperly authorized filing ratified or waived?

Idaho courts have recognized and applied the rule that a corporation's unauthorized acts may be ratified, and that such ratification "relate[s] back to the original act, making it valid from the beginning." *See, e.g., Portland Cattle Loan Co. v. Hansen Livestock & Feeding Co.*, 251 P. 1051, 1053 (Idaho 1926) (applying principle, with relation-back effect, to validate "acts of its officers, though improperly done"). But the person (or entity) ratifying the unauthorized act must be one who had authority to do the act in the first place. *See id.*

Similarly, *Rowland v. Rowland*, 633 P.2d 599 (Idaho 1981), held that courts frequently uphold "informal" actions of corporate boards of directors, and that

> [u]nderlying these decisions is the view that the general rule against informal corporate action exists solely for the protection of the shareholders; if they do not want or need the protection, a waiver may be inferred from their acquiescence in or knowing silence to a corporate decision arrived at through an informal procedure.

*Id.* at 605.

In *Hager v. Gibson*, 108 F.3d 35 (4th Cir. 1997), the movant (a shareholder) argued as ARI does here that *Price* holds a federal bankruptcy court has no jurisdiction to entertain an improperly authorized petition, and that the same must be dismissed. *Id.* at 38. The district court, finding an improper petition, nonetheless found the filing ratified. Hager appealed, disputing the finding of

MEMORANDUM OF DECISION (DISMISSAL) - 15

ratification and also arguing that the ratification doctrine could not cure a jurisdictional defect existing at the commencement of the bankruptcy case. *Id.* at 38-39.[16]

The court of appeals disagreed, noting that "Hager's reliance on *Price v. Gurney* is valid to a point, but the case does not take him as far as he needs and claims it to do." *Id.* at 39. "Critically, however, *Price* did not address whether the required authorization under local law could be found in ratification/relation back doctrine. It therefore does not foreclose that possibility." *Id.*

After discussing the doctrine of ratification under applicable Virginia law, the court stated:

> We therefore conclude that under Virginia law, the unauthorized filing of a voluntary petition in bankruptcy in behalf of a corporation might be ratified in appropriate circumstances by ensuing conduct of persons with power to have authorized it originally. Under such circumstances, it could therefore serve as the local law source of the authority required by *Price v. Gurney* for a voluntary bankruptcy filing in behalf of a corporation.

*Id.* at 40. In a footnote to this passage, the court observed that the ratification might be by the corporation itself, through conduct or formal action of its board of directors, or by the shareholders, such as through their acquiescence. *Id.* at n.2.

Several courts have held that the corporation itself, through conduct or

---

[16] The jurisdictional arguments advanced against ratification, including the contention that application of the doctrine would constitute the forbidden creation of subject matter jurisdiction by consent, and that it would violate the rule that federal court jurisdiction be determined as of the date of the action's commencement, were considered and rejected by the court. *Id.* at 40-41.

formal action of its board may ratify an unauthorized bankruptcy filing.[17]  That approach is not applicable in the instant case, at least as yet, because the board of directors has not been restored to its required minimum of three members and such a re-filled board has not ratified the March 3 filing resolution.

Shareholder ratification, however, is applicable.  Not only does *Hager* acknowledge the concept and note cases where it has been applied, the principle has been recognized by other courts.  *See*, *e.g.*, *In re Horob Livestock Inc.*, 2007 WL 2783361 (Bankr. D. Mont. Sept. 21, 2007) (applying North Dakota law, which provided ratification could be based on "conduct implying approval and adoption of the [unauthorized] act in question" and that ratification "may be express or may be inferred from silence and inaction"); *Rudebeck v. Sanderson (In re Nonpareil Consol. Copper Co.)*, 227 F. 575 (9th Cir. 1915) (finding that regardless of whether corporate bankruptcy petition was authorized, shareholders "cannot stand idly by and permit the administration of the estate to proceed in the bankruptcy court until some step was taken that did not meet their approval. . . .  [They] must

---

[17] *See New Haven Radio, Inc. v. Meister (In re Martin-Trigona),* 760 F.2d 1334, 1341 (2d Cir. 1985) (finding acquiescence through conduct of corporation and sole shareholder); *Boyce v. Chem. Plastics, Inc.*, 175 F.2d 839, 842-44 (8th Cir. 1949) (finding ratification through formal resolution of board); *In re Arkco Props., Inc.*, 207 B.R. 624 (Bankr. E.D. Ark. 1997) (noting bankruptcy filing must be subsequently properly ratified by board of directors validly holding office); *In re Wynco Distribs., Inc.*, 126 B.R. 131 (Bankr. D. Mass. 1991), *aff'd*, 48 F.3d 1211 (1st Cir. 1995) (acknowledging ratification through formal resolution of board); *In re I.D. Craig Serv. Corp.*, 118 B.R. 335, 337-38 (Bankr. W.D. Pa. 1990) (finding ratification based on conduct of board).

MEMORANDUM OF DECISION (DISMISSAL) - 17

move against it promptly, if at all[.]").[18]

Here, the bankruptcy petition was filed on March 3. Equity security holders were disclosed and listed as required by Rule 1007(a)(3) on March 18. Doc. No. 21. On March 20, the DIP served the notice of the commencement of the case on the equity security holders. *See* Doc. No. 29. On June 4, SPMI served the First Dismissal Motion on all parties on the master mailing list, which list included the equity security holders. *See* Doc. No. 166.[19] All the equity security holders were also noticed of the filing of and the scheduled hearing on the instant Motion to Dismiss. *See* Doc. No. 245.

All but one equity security holder have remained silent.[20] The only equity security holder to join SPMI in its Motion to Dismiss is ARI, which holds but 50,000 shares out of more than 39,664,000 outstanding shares shown on Doc. No. 21. The case has been pending five months between petition date and hearing on the Motion to Dismiss. No equity security holders, other than ARI, have voiced objection to the filing during that time. And ARI waited over three months after receiving notice of the case to appear as a joint movant in SPMI's Motion to

---

[18] *Quarter Moon Livestock* is not inconsistent, though it can be read in terms of estoppel as well as ratification. 116 B.R. at 778-79.

[19] As noted earlier, ARI is on the equity security holders list, and was therefore served with the DIP's March 20 notice. Doc. No. 29. It was also on the service list for the First Dismissal Motion. Doc. No. 166 at 2.

[20] Though appointment of an equity security holders committee may be sought by the UST, *see* § 1102(a)(1), or may be requested by a party in interest, § 1102(a)(2), no such committee has been formed.

MEMORANDUM OF DECISION (DISMISSAL) - 18

Dismiss. The progress of the case within those three months has been substantial, including protracted litigation between SPMI and the DIP. The silence during this time establishes sufficient inaction and acquiescence by shareholders to constitute shareholder waiver, *see Rowland*, 633 P.2d at 605, or ratification, *see Hager*, 108 F.3d at 40. Thus, on the record presented, the Court finds the unauthorized filing waived or ratified.

## CONCLUSION

The Motion to Dismiss will be denied. The Court will enter a separate order accordingly.

DATED: August 11, 2009

TERRY L. MYERS
CHIEF U. S. BANKRUPTCY JUDGE