Ford Elsaesser, ISB #2205
Bruce A. Anderson, ISB #3392
ELSAESSER JARZABEK ANDERSON
MARKS ELLIOTT & MACDONALD, CHTD.
Attorneys at Law
1400 Northwood Center Court
Coeur d'Alene, ID 83814
Tel:  (208) 667-2900
Fax:  (208) 667-2150

Attorney for Debtor-in-Possession

UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF IDAHO

| In Re: | Case No. 09-20178-TLM |
|---|---|
| STERLING MINING COMPANY, | SETTLEMENT AGREEMENT |
| Debtor-in-Possession | |

COME NOW Debtor-in-Possession, Sterling Mining Company ("Sterling"), by and through its undersigned counsel Bruce A. Anderson of Elsaesser Jarzabek Anderson Marks Elliott & Macdonald, Chtd., The United States Environmental Protection Agency ("USEPA") by and through its undersigned counsel, Loren Remsberg of the U.S. Department of Justice, and the Coeur d'Alene Tribe ("Tribe") by and through its undersigned counsel, Howard Funke, of Howard Funke & Associates, P.C., and in settlement of all issues raised in Sterling's Motion to Determine Penalty Amount Due EPA/Coeur d'Alene Tribe [Docket #469] and the United States' Proof of Claim [Claim #109-1 Part 2] hereby stipulate and agree as follows:

RECITALS

A.  Whereas Sterling, as lessee of the Sunshine Mine Lease executed on June 6, 2003 with Sunshine Precious Metals, Inc. ("Sunshine") [Ex. 100], is responsible for all legal obligations assumed by Sterling under such Lease.

B.  Whereas such Lease obligations assumed by Sterling include payment of Net Smelter Return ("NSR") royalties pursuant to Paragraphs 14-20 of the Partial Consent Decree

among the USEPA, the Tribe, Sunshine, and other entities, entered on January 22, 2001, in Case Nos. 96-0122-N-EJL and 91-0342-N-EJL (D. Idaho) ("2001 Consent Decree") [Ex. 218], which provides that, *inter alia*, Sunshine, its successors, and assigns are responsible to the Tribe, USEPA, and Federal Trustees for timely payment of NSR royalties and, if not timely paid, for the payment of stipulated penalties to the Tribe and USEPA based on the periods of noncompliance of NSR payments pursuant to Paragraphs 34 and 36-40 of the 2001 Consent Decree.

C. Whereas Sterling failed to timely pay NSR royalties of approximately $382,020.95 to the Tribe, USEPA, and the Federal Trustees when such payments were due.

D. Whereas Sterling filed for protection in the U.S. Bankruptcy Court, District of Idaho (the "Court"), Case No. 09-20178-TLM, on March 3, 2009.

E. Whereas the Tribe and the USEPA have both filed proofs of claim claiming that the NSR royalties, as well as penalties owed under the 2001 Consent Decree, are in amounts in excess of $1.0 million.

F. Whereas Sterling, per Court Order, has been deemed able to assume the Sunshine Lease subject to curing certain defaults and arrearages, including the NSR royalties and any associated penalties.

G. Whereas Sterling paid the NSR royalties in the amount of $382,020.95, plus accrued interest, to the USEPA and the Trustees on January 14, 2010.

H. Whereas Sterling filed a Motion to Determine Penalty Amount Due EPA/Coeur d'Alene Tribe [Docket #469] on December 22, 2009.

I. Whereas the matter of the penalty determination has been scheduled for hearing before the Court on March 10, 11, and 12, 2010.

J. Whereas Sterling, in order to confirm its proposed plan of reorganization, must determine and pay NSR royalties and penalties in a settled amount, or as determined by the Court, prior to confirmation.

K. Whereas the remaining issues among the parties with respect to the 2001 Consent Decree relate to the computation, character, and reasonableness of any penalties, as the past due NSR royalties are no longer in dispute.

L. Whereas the proof of claim filed by the USEPA alleged a claim for a $50,000 administrative penalty for Clean Water Act ("CWA") violations and a contingent claim under the Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA") for recovery of response costs incurred by the United States at the Bunker Hill Superfund Site.

M. Whereas Sterling paid USEPA $50,000 pursuant to this Court's Order dated August 21, 2009, in resolution of the CWA claim, and the USEPA resolves its CERCLA claim in this Settlement Agreement.

N. Whereas Sterling, the Tribe, and the USEPA, in full settlement of all amounts claimed due, and as set for hearing in Sterling's Motion to Determine Penalty Amount Due EPA/Coeur d'Alene Tribe, stipulate and agree to full settlement as follows:

## SETTLEMENT

The parties so stipulate and agree as follows:

1. The above recitals are hereby incorporated into this Settlement Agreement.

2. Sterling shall pay $1,250,000.00 to the Tribe and the USEPA, of which $1.0 million is for penalties and $250,000.00 is for attorney's fees and costs. Payment of the penalties shall be ½ to the USEPA and ½ to the Tribe pursuant to Paragraphs 34 and 38 of the 2001 Consent Decree. Payment of the attorney's fees and costs shall be $210,000.00 to the Tribe and

3

$40,000.00 to the United States Department of Justice. The United States and the Tribe shall issue payment instructions to Sterling.

3. The Tribe and the USEPA hereby confirm that the payments made pursuant to Paragraph 2 above shall be deemed full and final satisfaction of all penalties, fees, and costs that could be asserted against Sterling pursuant to the 2001 Consent Decree as of the effective date of this Settlement Agreement. That once paid, no further obligation for such penalties, fees, and costs exists, and the Tribe and the USEPA will not pursue any such foregone or settled amounts against Sunshine or its successors or assigns. Settlement payment shall be made no later than April 15, 2010, or as agreed by the Parties.

4. Sterling agrees that:

a. Sterling shall record the 2001 Consent Decree and this Settlement Agreement as an encumbrance on the Sunshine Mine and on the mineral rights at such mine, and Sterling shall provide written evidence of such recording to the undersigned counsel for the USEPA and the Tribe, within five days of closing the option to purchase the leasehold;

b. Sterling, and its successors and assigns by purchase, lease, or other transfer, shall remain obligated after approval of this Settlement Agreement to timely pay NSR royalties as well as interest and stipulated penalties in the event of nonpayment, and to comply with all terms of the 2001 Consent Decree. In the event of nonpayment of NSR royalties, interest and stipulated penalties shall accrue notwithstanding the filing by Sterling, or its successors or assigns, of any petition in bankruptcy;

c. When NSR royalties are due to the United States and the Tribe, Sterling shall furnish a calculation sheet detailing the calculation of the payment amount, pursuant to Paragraph 16 of the 2001 Consent Decree, to the Tribe and the U.S. Department of Justice. The calculation sheet shall reference DOJ Case #90-11-3-128/2, at which time the Financial

Litigation Unit of the U.S. Attorney's Office for the District of Idaho shall issue FedWire Electronic Funds Transfer ("ETF") instructions to Sterling. Of any NSR royalties paid by Sterling, ½ shall be paid to EPA Region 10 (referencing Site Spill ID # 102Q), and ½ shall be paid to DOI Account Number 14x5198 (NRDAR) for the benefit of the Tribe and the Federal Trustees;

  d. The parties agree that the 2001 Consent Decree and the Royalty Deed (Record No. 398123, Records of Shoshone County, Idaho, 2001) may be subject to differing interpretation. For purposes of this settlement, and in no way to be construed a modification or amendment to the 2001 Consent Decree or the Royalty Deed, the parties agree to the following interpretation:

  i. NSR royalty payments shall become due no later than the thirtieth (30th) day after the conclusion of each calendar quarter during which Sterling receives any payment or proceeds from minerals extracted at the property leased by Sterling and known as the Sunshine Mine, whether provisional, partial, or final, and notwithstanding the characterization of such as a "loan" in contracts covering the transaction.

  ii. Upon the final settlement from the smelter, broker, or other buyer, a "true up" will be calculated, included, and applied against the next due royalty payment. A "true up" is the increase or decrease in a quarterly royalty determination to account for differences between a preliminary payment and the final settlement amount.

  iii. Should Sterling make an overpayment of royalties to the USEPA and the Tribe and Federal Trustees, the overpayment shall be calculated and credited, in whole or in part to the extent possible, by Sterling as an offset against the next due royalty payment, continuing in this manner into the next calendar quarter and so on until the credit plus any interest allowed by section iv, below, is satisfied.

     iv. If the first next due royalty payment is insufficient for the overpayment credit in whole or in part, then interest shall accrue on the balance of such credit beginning 30 days after the calendar quarter when Sterling provided written notice to the United States and the Tribe of the overpayment, at the rate set forth in Paragraph 16, page 11, of the 2001 Consent Decree, until such overpayment credit plus any allowed interest is satisfied. If any single overpayment is still owed to Sterling by the United States and the Tribe after a term of one year, the United States and the Tribe shall refund the overpayment, plus any interest allowed under this subparagraph.

     v. The parties to this Settlement Agreement recognize and acknowledge that the payment obligations of the United States under this Settlement Agreement can only be paid from appropriated funds legally available for such purpose. Nothing in this Settlement Agreement shall be interpreted or construed as a commitment or requirement that any Federal Agency obligate or pay funds in contravention of the Anti-Deficiency Act, 31 U.S.C. § 1341, or any other applicable provision of law.

  5. The USEPA withdraws the CERCLA claim alleged in its proof of claim. The United States and the Tribe reserve the right to bring CERCLA claims against Sterling based on conduct occurring on or after the effective date of this Settlement Agreement. In any subsequent administrative or judicial proceeding initiated by the United States or the Tribe for injunctive relief, recovery of response costs, recovery for natural resource damages, or other relief relating to the Site, Sterling shall not assert, and may not maintain, any defense or claim based upon the principles of waiver, *res judicata*, collateral estoppel, issue preclusion, claim-splitting, or other defenses based upon any contention that the claims raised by the United States or the Tribe in the subsequent proceeding were or should have been brought in the instant case. Sterling further

agrees to condition any sale, lease, or other transfer of the mine on the purchaser's, lessee's, or transferee's agreement to the same.

6. Sterling, and its successors and assigns, shall not assert any claims or causes of action against the United States and/or the Tribe, their departments, agencies, officials, or instrumentalities with respect to the Sites based upon conduct occurring before the date that this Settlement Agreement is first lodged with the Court for approval, including but not limited to: (i) any claims for contribution; (ii) any direct or indirect claims for reimbursement from the Hazardous Substance Superfund established pursuant to 26 U.S.C. § 9507; and (iii) any claims relating to response activities at the Sites.

7. Any person who executes this Settlement Agreement on behalf of any of the parties represents that he or she is duly authorized to do so.

8. This Settlement Agreement may be executed in counterparts, and each such counterpart together with the others shall constitute one and the same instrument.

9. This Settlement Agreement shall become effective upon execution by all of the parties and approval by the Court.

10. This Settlement Agreement, together with any subsequent documents executed in connection herewith, constitutes the sole and complete agreement among the parties with respect to Sterling's Motion to Determine Penalty Amount Due EPA/Coeur d'Alene Tribe [Docket #469] and the United States' Proof of Claim [Claim #109-1 Part 2].

11. Sterling, and its successors and assigns by purchase, lease, or other transfer, shall be obligated by the terms of this Settlement Agreement. Sterling agrees to condition any sale, lease, or other transfer of the Sunshine Mine on the purchaser's, lessee's, or transferee's agreement to the terms of this Settlement Agreement.

7

12. This Settlement Agreement may not be amended except in writing signed by all parties and approved by the Court.

**AGREED TO AND ACCEPTED BY:**

*For Sterling Mining Company:*

Date: 3/9/2010

*[signature]*
Bruce A. Anderson
ELSAESSER JARZABEK ANDERSON
MARKS ELLIOT & MACDONALD, CHTD.
1400 Northwood Center Court
Suite C
Coeur d'Alene, Idaho 83814
Tel: (208) 667-2900
Fax: (208) 667-2150

*For EPA:*

Date: 3/12/2010

Bruce S. Gelber
Section Chief
Environmental Enforcement Section
Environment and Natural Resources Division

Loren Remsberg
Trial Attorney
Environmental Enforcement Section
Environment and Natural Resources Division
U.S. Department of Justice
601 D Street NW
Washington, DC 20004
Tel: (202) 514-3143
Fax: (202) 514-4180

Date: 3-9-2010

Daniel D. Opalski
Director
Office of Environmental Cleanup
U.S. EPA Region 10
1200 Sixth Avenue
Seattle, Washington 98101

Date: 3/9/10

*For Coeur d'Alene Tribe:*

/s/ Howard Funke

Howard Funke
Howard Funke & Associates, PC
424 Sherman Ave.
PO Box 969
Coeur d'Alene, Idaho 83816
Tel: (208) 667-5486
Fax: (208) 667-4695