Ford Elsaesser, ISB #2205
Bruce A. Anderson, ISB #3392
ELSAESSER JARZABEK ANDERSON
MARKS & ELLIOTT, CHTD.
Attorneys at Law
1400 Northwood Center Court
Coeur d'Alene, ID 83814
Tel:    (208) 667-2900
Fax:    (208) 667-2150

Attorney for Debtor-in-Possession

UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| In Re: | Case No. 09-20178-TLM |
| STERLING MINING COMPANY, | SECOND AMENDED PLAN OF REORGANIZATION |
| Debtor-in-Possession | |

Sterling Mining Company ("Debtor"), the Debtor-in-Possession in the above-captioned Chapter 11 case, proposes the following Plan of Reorganization pursuant to Sub-Chapter II of Chapter 11 of the Bankruptcy Code:

ARTICLE I
DISCLOSURE STATEMENT

1.    The Debtor has filed a Disclosure Statement with modifications pursuant to 11 U.S.C. § 1125 and Bankruptcy Rule 3016(c).  The Revised Second Amended Disclosure Statement, with Addendum ("Disclosure Statement"), has been approved by the Bankruptcy Court prior to this Plan being submitted to creditors and security holders. The Disclosure Statement provides useful information to aid and assist creditors and security holders in voting on the Plan.   YOU ARE URGED TO READ THE

SECOND AMENDED PLAN
OF REORGANIZATION                -1-

DISCLOSURE STATEMENT WITH CARE IN EVALUATING THE IMPACT OF THE PLAN UPON YOUR CLAIMS OR SECURITY INTERESTS.

## ARTICLE II
### DEFINITION OF TERMS

2.      A term used in this Plan that is not defined below and that is defined in the Bankruptcy Code shall have the meaning ascribed in the Bankruptcy Code.  When used in this Plan, the following terms shall have the meanings specified below, unless the context otherwise requires:

2.1      ALLOWED CLAIM:  Any claim in the amount and of the priority classification set forth in the proof of such claim that has been filed timely in the Reorganization Case, or in the absence of such proof, as set forth in the Debtor's schedules of liabilities filed in the Reorganization Case, unless:  (i) such claim has been listed in such schedules as disputed or unliquidated, in which case such claim shall be allowed only in such amount and such classification as is authorized by Final Order of the Bankruptcy Court;  (ii) such claim has been objected to or is objected to after Confirmation, in which case such claim shall be allowed only in such amount and such classification as if authorized by Final Order of the Bankruptcy Court;  or, (iii) such claim has been paid in full, withdrawn, or otherwise deemed satisfied in full.

2.2      ALLOWED INTEREST:  Any Equity Interest in the amount and of the priority classification set forth in the proof of such Equity Interest that has been filed timely in the Reorganization Case, or in the absence of such proof, as set forth in the Debtor's listings and schedules filed in the Reorganization Case.

2.3      AS SOON AS PRACTICABLE:  Unless extended by court order, within thirty days following the occurrence of a triggering event.

SECOND AMENDED PLAN
OF REORGANIZATION              -2-

2.4     BANKRUPTCY CODE or CODE:    The Bankruptcy Code enacted November 6, 1978, as set forth in Title 11 of the United States Code, and incorporating all amendments thereafter.

2.5     BANKRUPTCY COURT or COURT:    The United States Bankruptcy Court for the District of Idaho, before which the Reorganization Case is pending, or if that Court ceases to exercise jurisdiction over the Bankruptcy Case, the Court that does exercise jurisdiction.

2.6     BIDDING PROCEDURE:  The procedure set forth in this Plan for the sale of all authorized but un-issued common stock of Sterling Mining Company

2.7     CLASS:  A class of claims or equity security interests as defined in Article III of this Plan.

2.8     CONFIRMATION:    The entry of the Order of Confirmation by the Bankruptcy Court.

2.9     CONFIRMATION DATE:  The date on which the Order of Confirmation is entered on the docket of the Bankruptcy Court.

2.10    DEBTOR:  Sterling Mining Company.

2.11    DISPUTED CLAIM:    A filed or scheduled claim of an alleged creditor as to which an objection has been filed by a party in interest, or which is listed as disputed in the bankruptcy petition and schedules.

2.12    EFFECTIVE DATE:  Thirty days after Confirmation unless the effect of the Order of Confirmation is stayed under Bankruptcy Rule 8005.

2.13    ESTATE:  The Estate created pursuant to § 541 of the Bankruptcy Code.

2.14    FINAL ORDER:  An order of a court: (i) as to which the time to appeal, petition for writ of certiorari, or otherwise seek appellate review or to move for reargument, rehearing, or reconsideration has expired and as to which no appeal, petition for writ of certiorari, or other appellate review, or proceedings for reargument, rehearing, or reconsideration shall then be pending; (ii) as to which any right to appeal, petition for certiorari, or move for reargument, rehearing, or reconsideration shall have been waived in writing by the party with such right; or (iii) in the event that an appeal, writ of certiorari, or other appellate review or reargument, rehearing, or reconsideration thereof has been sought, which shall have been affirmed by the highest court to which such order was appealed, from which writ of certiorari or other appellate review or reargument, rehearing, or reconsideration was sought, and as to which the time to take any further appeal, to petition for writ of certiorari, to otherwise seek appellate review, and to move for reargument, rehearing, or reconsideration shall have expired; *provided, however*, that the possibility that a motion under Rule 60 of the Federal Rules of Civil Procedure or under § 1144 of the Bankruptcy Code, or any analogous rule under the Bankruptcy Rules, may be filed with respect to such order shall not cause such order not to be a Final Order.

2.15    FREE AND CLEAR:  Free and clear of all liens, claims, causes of action, encumbrances, interests, pledges, security interests, rights of setoff, restrictions or limitations on use, successor liabilities, conditions, rights of first refusal, options to purchase, and expenses and charges of any type, whenever and wherever arising or asserted, whether known, unknown, legal, equitable, matured, unmatured, disputed, undisputed, contingent, fixed, bonded, secured or unsecured.

SECOND AMENDED PLAN
OF REORGANIZATION                    -4-

2.16    LITIGATION TRUST:  The Debtor shall retain $100,000.00 to prosecute affirmative actions on behalf of the Debtor, Debtor-in-Possession and the estate, in the form of a Litigation Trust ("Trust").  Such Trust shall be set up with the beneficiaries being the unsecured general claimants of Debtor.  A trustee shall be selected by Debtor, and approval of the Trustee and a Litigation Trust Agreement shall be put before the Court after notice of hearing and right to object, but no later than fifteen (15) days after confirmation.  Through the Trust the Debtor retains all of the estate's, Debtor's, and Debtor-in-Possession's, rights, claims and causes of action, whether legal or equitable, against all persons arising under the avoidance, preference, and fraudulence conveyance section of the Bankruptcy Code, or under any Federal or State law for recovery of avoidable fraudulent conveyances or transfers, as well as other causes of actions owned by the Debtor on the effective date.  The Litigation Trustee shall also make distributions to holders of allowed claims pursuant to the Plan to the extent not already distributed.

The Trust will not be responsible for defending any preexisting, or later filed, adversary proceedings or appeal issues against Debtor, which defense of will run to the Reorganized Debtor.  The Reorganized Debtor will also be responsible for any delinquent regulatory filings of Debtor.

2.17    MINIMUM BID:  The bid of Alberta Star, which is the opening bid, in the amount of $11,750,000.00, for the authorized but un-issued common stock of Sterling Mining Company.

2.18    OVERBID:  The bid of Minco Silver Corporation in the amount of $12,500,000.00, for the authorized but un-issued common stock of Sterling Mining

SECOND AMENDED PLAN
OF REORGANIZATION                    -5-

Company, which exceeds the minimum bid of Alberta Star, or any subsequent higher bids.

2.19    PETITION DATE:  March 3, 2009, the date upon which the Debtor filed the Chapter 11 Petition commencing the Reorganization Case.

2.20    PLAN:  This Plan of Reorganization in its present form or as it may be amended or modified from time to time pursuant to order of the Bankruptcy Court.

2.21    PROFESSIONAL PERSONS: Persons retained or to be compensated pursuant to §§ 326, 327, 328, 330 and/or 1103 of the Bankruptcy Code.

2.22    PRO RATA:  Proportionally so that the ratio of the amount distributed on account of a particular Allowed Claim to the amount of such Allowed Claim is the same as the ratio of the amount distributed on account of all Allowed Claims in the Class of which such particular Allowed Claim is a member to the total amount of all Allowed Claims in such Class.

2.23    REORGANIZATION CASE:   Chapter 11 case pending before the Bankruptcy Court commenced by the Debtor, designated Case No. 09-20178-TLM.

2.24    REORGANIZED DEBTOR:  Sterling Mining Company, on or after the Effective Date.

2.25    RESIDUAL SALES PROCEEDS:  Any cash remaining from the proceeds of the sale described in Article V of this Plan after (i) payment of all allowed administrative claims, allowed priority claims and allowed claims in Classes 1 through 6 and (ii) transfer of $100,000.00 to the Litigation Trust to pay its expenses.

2.26   SECURED CLAIM:  An Allowed Claim that is a secured claim against the Debtor determined in accordance with §§ 506, 552 and 1111 of the Bankruptcy Code.

2.27   UNCLASSIFIED CLAIM:  An Allowed Claim described in § 507(a)(1) and § 507(a)(8) of the Bankruptcy Code and any fees payable pursuant to 28 U.S.C. § 1930.

2.28   UNSECURED CLAIM:  An Allowed Claim that is not a Secured Claim.

ARTICLE III
CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS

3.   All claims, other than administrative and priority claims, as defined in § 101(5) of the Bankruptcy Code, against the Debtor are classified as set forth herein.  All claims are impaired.  A claim or interest is in a particular Class only to the extent it qualifies within the definition of such Class and is in a different Class to the extent it qualifies within the definition of such different Class.

3.1   <u>Administrative Claims:</u>   Claims of Elsaesser Jarzabek Anderson Marks Elliott & Macdonald, Chtd. for attorneys' fees rendered prior to confirmation are estimated at $150,000.00.   Unpaid fees due the U.S. Trustee shall also be an administrative claim and are estimated at $13,000.00.  Minco Silver Corporation's claim for DIP Financing is estimated at $5,150,000.00.

3.1.1   All administrative claims will be paid on or before the effective date of the Plan.

The claim of Minco Silver Corporation in the estimated amount of $5,150,000.00 likewise will be full paid on or before the effective date of the Plan or, if Minco is the successful bidder, Minco's administrative claim shall be allowed in full as a credit bid towards the purchase of common stock in Sterling Mining Company.

SECOND AMENDED PLAN
OF REORGANIZATION            -7-

3.2    Unclassified Priority Claim:  The amended claim of the Internal Revenue Service in the amount of $100.00 is for unpaid taxes.

3.2.1    The Internal Revenue Service claim in the amount of $100.00 will be paid on or before the effective date of the Plan.

3.3    Class 1 – Monetary Defaults/Pecuniary Losses:  Class 1 claims are claims determined by the Court by Order dated August 21, 2009.

3.3.1    Class 1a:      The claim of Sunshine Precious Metals, Inc., for unpaid rent in the amount of $130,000.00, or the amount then due.

3.3.2    It is anticipated that the claim of Sunshine Precious Metals for unpaid rent in the amount of $130,000.00, or the amount then due, will be paid before the confirmation hearing, but no later than the effective date of the Plan.

3.3.3    Class 1b:      The claim of Shoshone County, for unpaid real property taxes, in the amount of $70,000.00.

3.3.4    It is anticipated that the claim of Shoshone County for unpaid real property taxes in the amount of $70,000.00 will be paid before the confirmation hearing, but no later than the effective date of the Plan.

3.3.5    Class 1c:      Intentionally    omitted    as    Coeur    d'Alene Tribe/U.S.E.P.A. claim of $382,020.95 has been paid.

3.3.6    The Coeur d'Alene Tribe, United States Environmental Protection Agency and the Debtor have reached a basis of settlement for the penalty portion.  As of the filing of this Plan, the basis for settlement is in the amount of $1.25 million for which Debtor will seek approval of such compromise on or before the confirmation hearing.  It should be noted that the amounts set forth above on behalf of Minco Silver Corporation,

SECOND AMENDED PLAN
OF REORGANIZATION                -8-

as an administrative claim, includes additional borrowing of $2.0 million, for which $1.25 million has been earmarked for payment of the penalty, and an additional $750,000.00, or $250,000.00 per month, has been earmarked for additional monthly carrying costs of Debtor until a Plan of Reorganization is confirmed.  Accordingly, readers are cautioned that the $1.25 million figure is included in both paragraph 3.1 above  and this paragraph, and should not be double counted for purposes of determining amounts necessary for bids.

        3.3.7    <u>Class 1d:</u>    The claim of Avista Corporation, for a utility deposit, in the amount of $140,960.00.

        3.3.8    The claim of Avista Corporation for utility deposit in the amount of $140,960.00 shall be paid in full, or at an amount agreed to with Avista Corporation, on or before the confirmation hearing of the Plan of Reorganization, but no later than the effective date of the Plan.

        3.3.9    <u>Class 1e:</u>    The claim of Avista Corporation for utilities owed in the amount of $177,900.22.

        3.3.10  The claim of Avista Corporation for unpaid utilities owed in the amount of $177,900.22 shall be paid on or before the confirmation hearing of the Plan of Reorganization, but no later than the effective date of the Plan.

        3.4    <u>Class 2 - Priority Unsecured:</u>

        3.4.1.  <u>Class 2:</u>  Class 2 consists of all unpaid wage claims in the amount of $102,293.60, and capped at a maximum of $10,950.00 per claim.

        3.4.2   Class 2 claimants consisting of all unpaid wage claims in the amount of $102,293.60 shall be paid on or before effective date of the plan.

SECOND AMENDED PLAN
OF REORGANIZATION            -9-

3.5    Class 3 – Secured:

3.5.1.  Class 3: consists of the secured claim of the Kootenai County Treasurer in the amount of $108.19, which claim is secured by property of the estate, which property will be vested in the Reorganized Debtor in accordance with paragraph 6.1 of the Plan.

3.5.2    The secured claim of Kootenai County in the amount of $108.19 shall be paid in full on or before the effective date of the Plan.

3.6    Class 4 – Secured:

3.6.1    Class 4 consists of the claim of Minco Silver Corporation in the amount of $6,417,530.72, which claim is secured by property of the estate except for the Sunshine lease, which property will be vested in the Reorganized Debtor in accordance with paragraph 6.1 of the Plan.

3.6.2    The claim of Minco Silver Corporation is in the amount of $5,858,626.83.  Simple interest at the rate of 10% through April 15, 2010, is in the amount of $558,903.89, for a total of $6,417,530.72.  No default interest or late fees shall accrue or be paid post-petition.  Minco's claim shall be paid in full, with interest at 10% to the date of payment, on or before the effective date of the Plan or, if Minco is the successful bidder, Minco's claim shall be allowed in full as a credit bid towards the purchase of common stock in Sterling Mining Company.

3.7    Class 5 – Secured:

3.7.1    Class 5 consists of the claim of Private Capital Group in the amount of $2,203,328.93, which claim is secured by property of the estate, except for the

SECOND AMENDED PLAN
OF REORGANIZATION                    -10-

Sunshine lease, which property will be vested in the Reorganized Debtor in accordance with paragraph 6.1 of the Plan.

3.7.2   Private Capital Group has filed a proof of claim listing its claim in the amount of $1,784,944.44 as of the petition date.  Private Capital Group's contract with the Debtor provides for interest at the rate of 24%, or default interest at the rate of 36%.  In addition, Private Capital Group's contract with the Debtor provides for a late fee of 1.5% every two (2) weeks.

3.7.3   Debtor herein agrees to pay Private Capital Group its proof of claim amount of $1,784,944.44, plus interest up through April 15, 2010, at the rate of 24%, or $375,860.26 for a total of $2,160,804.70, or if later the amount then due at 24% to the date of payment, plus reasonable attorney's fees estimated at $42,524.23, for a total of $2,203,328.93.  No default interest or late fees shall accrue or be paid post-petition.

3.8     Class 6 – Secured:

3.8.1   Class 6 consists of the claim of Shoshone County Treasurer in the amount of $9,877.68, which claim is secured by property of the estate, which property will be vested in the Reorganized Debtor in accordance with paragraph 6.1 of the Plan.

3.8.2   The secured claim of the Shoshone County Treasurer, in the amount of $9,877.68, shall be paid in full on or before the effective date of the Plan, with interest as claimed.

3.9     Class 7 - Unsecured General Claims:

3.9.1   Class 7 consists of the allowed claims of the Unsecured General Claimant Class.

SECOND AMENDED PLAN
OF REORGANIZATION                    -11-

3.9.2    The total claims in class 7, after the claims objection process, are estimated to be in the amount of $6,000,000.00 to $9,500,000.00. Class 7 claimants shall receive a pro rata share of the Residual Sale Proceeds after payment of all administrative, priority and secured claims. Such share will be distributed pro rata to the allowed claimants, as well as the recovery of any litigation from the Litigation Trust.

3.10    Class 8 – Equity Security Holders:

3.10.1 Class 8 claims consist of the interest of equity security holders in common stock, stock warrants, or other claimed equity interests of Sterling Mining Company.

3.10.2    Class 8 equity security holders shall receive no property through this Plan of Reorganization and all common stock, stock warrants or other claimed equity interests, other than the authorized but un-issued common shares of Sterling, shall be cancelled on the Effective Date. Since Class 8 is deemed to have not have accepted the Plan, there shall be no necessity for voting by Class 8.

If bidding reaches a point where all Class 7 claims are paid in full, any surplus shall be shared pro rata by Class 8.

### ARTICLE IV
### CLAIMS AND INTERESTS NOT IMPAIRED BY THE PLAN

4.    Classification and Treatment of Claims and Equity Security Interest Holders:

The Plan establishes eight classes of claims. If the Plan is confirmed by the Bankruptcy Court and becomes effective, the class into which a claim falls will determine the manner in which such claim will be treated. The classes of claims established in the Plan are summarized below:

SECOND AMENDED PLAN
OF REORGANIZATION                -12-

Class 1 – Impaired
Class 2 – Impaired
Class 3 – Impaired
Class 4 – Impaired
Class 5 – Impaired
Class 6 – Impaired
Class 7 – Impaired
Class 8 – Impaired

All claims, as defined in § 101(5) of the Bankruptcy Code, against the Debtor are

classified as set forth herein. A claim or interest is in a particular Class only to the extent

it qualifies within the definition of such Class and is in a different Class to the extent it

qualifies within the definition of such different Class.

ARTICLE V
SALE OF STOCK TO FUND PLAN

5.    The Debtor shall sell free and clear all of its remaining authorized, but un-

issued, common stock in Sterling Mining Company. Such sale shall be made through the

bid procedures set forth below. As of the date of the filing of this Plan, the Debtor has a

minimum bid for such common stock in the amount of $11,750,000.00, submitted by

Alberta Star, and an overbid in the amount of $12,500,000.00, submitted by Minco Silver

Corporation. Pursuant to the bid procedures, interested bidders may submit a bid, or the

minimum bidder or overbidder may submit additional bids. An auction of the common

stock shall be conducted on April 21, 2010.

On the confirmation date, the Court shall confirm the sale of such common stock

and confirm the Chapter 11 Plan. Sales proceeds shall be paid to the Litigation Trust at

closing. The Litigation Trustee shall pay all remaining unpaid cure or default amounts, if

any remain, all allowed administrative expenses, all allowed priority claims, and all

allowed Class 1-6 claims, as set forth above, plus pay $100,000.00 to the Litigation

Trustee.  After the payment of the above listed claims, the Residual Sale Proceeds shall

be divided pro rata among the allowed unsecured general claimants.  It is anticipated that

the unsecured general claimants shall not be paid in full.  All remaining issued and

outstanding common stock, and any other claimed equity interests in the Debtor, shall be

cancelled, and such equity security holders shall receive no property through this Plan.

     5.1     <u>Bidding Procedures for Sterling Mining Company Common Stock:</u>

     5.1.1   <u>Introduction:</u>  The Debtor has entered into an agreement with

Alberta Star for the sale of 100% of the un-issued and outstanding common stock of

Sterling Mining Company for $11,750,000.00.  This agreement, if Alberta Star is the

successful purchaser, will entitle Alberta Star to 100% ownership of Sterling.

     Minco Silver Corporation, the largest secured creditor of Sterling, has

presented an overbid of $12,500,000.00 for 100% of the authorized but un-issued

common stock of Sterling Mining Company.  A portion of Minco Silver Corporation's

bid, in the amount of approximately $11,500,000.00, may be made in the form of a credit

bid for Minco Silver Corporation's secured claim which consists of its pre-petition claim

in the amount of $6,417,000.00, and its post-petition Debtor-in-Possession secured

financing in the estimated amount of $5,150,000.00.

     The bids of Alberta Star and Minco Silver Corporation are subject to

higher and better offers submitted in accordance with the process described in these

bidding procedures.

     5.2     <u>The Assets Sold:</u>  100% of the authorized, but un-issued, common stock of

Sterling Mining Company, 40,139,427 shares.

     5.3     <u>Purchase Price:</u>  The purchase price shall be in U.S. Dollars.

SECOND AMENDED PLAN
OF REORGANIZATION        -14-

5.4 <u>Key Dates:</u>  The key dates for the sale process are as follows:

- February 15, 2010                    Due date for deposits and
- identification of bidders;
- April 19, 2010, at 5:00 p.m.         Due date for bids;
- April 21, 2010, at 8:00 a.m.         Auction;
- May 3, 2010, at 10:00 a.m.           Plan confirmation hearing and
  sale approval hearing; and
- May 14, 2010                         Sale closing date.

(All times are Pacific Standard Time)

5.5 <u>Bidding Procedures:</u>  Set forth below are the bidding procedures to be employed with respect to the proposed sale of 100% of the common stock of Sterling Mining Company.  These bidding procedures are appended to, and are incorporated in, the Debtor's Disclosure Statement and Plan of Reorganization.  It is through these procedures that the Debtor, and the Court, will determine the highest, best and/or superior offer for 100% of the common stock of Sterling Mining Company.

5.6 <u>Stalking Horse Bid:</u>  On October 30, 2009, Sterling and Alberta Star Development Corp., the Proposed Purchaser, entered into a Binding Term Sheet, wherein Alberta Star, the "stalking horse" bidder committed to purchasing 100% of the authorized, but un-issued, common shares of Sterling Mining Company for $11,750,000.00.  Such agreement was documented in an Acquisition Agreement dated November 17, 2009, which contained the following material terms:

- The purchase of 100% of the common stock of Sterling Mining Company for $11,750,000.00.
- A breakup fee in the amount of $250,000.00, should Alberta Star not be the Successful Bidder, and under other conditions.
- That subsequent overbids be in an amount of not less that $250,000.00 plus the break fee, or $500,000.00.
- That the agreement be set forth in a Chapter 11 Plan of Reorganization filed no later than December 15, 2009, with confirmation of the Plan of Reorganization to occur no later than February 28, 2010.

SECOND AMENDED PLAN
OF REORGANIZATION                    -15-

5.7    The Minco Overbid:   Minco Silver Corporation, the Debtor's largest secured creditor, has presented an overbid in the amount of $12,500,000.00. Such bid may be made in the form of a credit bid in an amount estimated at $11,500,000.00 for secured financing due Minco Silver Corporation, with the balance in cash. Minco Silver Corporation's bid is considered a Qualified Bid.

5.8    The Bidding Process:   The Debtor and its advisors shall (i) determine, in its sole discretion, whether any bids for the stock of Sterling are Qualified Bids (defined below); (ii) coordinate the efforts of Potential Bidders (defined below) in conducting their due diligence investigations; (iii) receive and evaluate offers from Potential Bidders; and (iv) negotiate in good faith any offers made to purchase the common stock of Sterling Mining Company.

Persons who wish to participate in such bidding process must be Potential Bidders. Neither the Debtor, nor its representatives, shall be obligated to furnish information of any kind whatsoever to any person that is not a Potential Bidder. The Debtor and its professionals shall use good faith efforts to provide all Potential Bidders with substantially similar access and information.

5.9    Participation Requirements:   Any person that wishes to conduct due diligence and participate in the sale process, must first deliver to the Debtor:

- An executed confidentiality agreement in form and substance to be provided by the Debtor; and
- Submission of a deposit in the amount of $1,250,000.00 to Debtor. Minco is excluded from such deposit requirement. Such deposit shall be held in escrow, and shall be refunded provided Potential Bidder's bid is exceeded by a superior bid.

SECOND AMENDED PLAN
OF REORGANIZATION          -16-

Potential Bidder is a person that delivers the agreement and deposit as set forth above, and that the Debtor determines, in its sole discretion, is able to submit a bona fide cash offer for 100% of the purchase of Sterling common stock.

5.10    Credit Bids: All secured creditors of Sterling Mining Company including Private Capital Group ("PCG") and Minco Silver Corporation, shall be entitled to credit bid all allowed amounts due on the respective secured claims toward the final purchase price of the common stock. The ability to credit bid does not constitute a waiver as to PCG of the requirement to submit a deposit in the amount of $1,250,000.00 to Debtor.

5.11    Due Diligence: Due diligence information shall be available directly from the Debtor by contacting:

> Robert Higdem
> Sterling Mining Company
> 2201 Government Way, Ste. E.
> Coeur d'Alene, Idaho 83814
> Phone #: (208) 666-4070
> Email: rhigdem@sterlingmining.com

Such information shall be subject to the confidentiality agreement set forth above. If, at any time, the Debtor determines that a Potential Bidder does not satisfy the requirements to qualify as such, then such Potential Bidder's right to conduct due diligence terminates.

5.12    Due Diligence from Bidders: Each Potential Bidder shall comply with all reasonable requests for additional information and due diligence access by the Debtor, or its advisors, regarding such bidder and its contemplated transaction, as well as its financial capacity to complete such transaction. Failure by a Potential Bidder to comply with such request shall be basis for the Debtor to determine that the Potential Bidder is not a Qualified Bidder, in Debtor's sole discretion.

SECOND AMENDED PLAN
OF REORGANIZATION                    -17-

5.13    <u>Bid Deadline:</u>  The deadline for a Potential Bidder to submit bids shall be

**April 19, 2010, at 5:00 p.m., Pacific Standard Time (8:00 p.m. Eastern Standard**

**Time).**  Any Potential Bidder failing to submit a bid prior to this time shall not be

deemed a Qualified Bidder.

Prior to such deadline a Potential Bidder desiring to make a bid shall deliver

written copies of its bid to counsel for Debtor at:

> Bruce A. Anderson
> Elsaesser Jarzabek Anderson Marks & Elliott, Chtd.
> 1400 Northwood Center Court, Suite C
> Coeur d'Alene, Idaho 83814
> Phone: (208) 667-2900
> Fax:    (208) 667-2150
> Email: brucea@ejame.com

5.14    <u>Bid Requirements:</u>  All bids must include two (2) copies of the following,

in writing:

- <u>Minimum Overbid</u>.  A proposed purchase price, in cash, which is determined by the Debtor to be equal or greater than the Minco overbid of $12,500,000.00.
- <u>Good Faith Deposit</u>.  A good faith deposit in the form of a certified check payable to the Debtor, or other immediately available funds, equal to $1,250,000.00 ("Deposit").  The Deposit shall be held in escrow, without interest, and will be refunded on the terms set forth below.
- <u>Authorization</u>.  Evidence or a statement indicating that the Potential Bidder has obtained authorization and approval from its Board of Directors, or comparable governing body, to make such bid and to accept the terms and conditions of the sale of the common stock of Sterling Mining Company.
- <u>Proof of Financial Ability</u>.  Evidence of sufficient cash on hand or written evidence of a commitment for financing, or other evidence of the ability to pay the bid amount, with appropriate contact information so as to enable Debtor to confirm such financing.
- <u>Disclosure</u>.  A written disclosure of the identity of each entity that will be bidding for Sterling's common stock.
- <u>Further Information</u>.  Such other information as may be reasonably requested by the Debtor, including any information that would allow the Debtor to ascertain the credit worthiness of the Potential Bidder.

In addition, any bid for the Sterling common stock must:

- Be for 100% of the common stock of Sterling;
- Not be conditioned on obtaining financing or the outcome of any due diligence by the Potential Bidder; and
- Request or entitle the Potential Bidder to any breakup fee, topping fee, termination fee, expense reimbursement or similar type of payment.

All bids submitted in conformity with the above shall be considered Qualified Bids. The Debtor reserves the right to determine the value of any Qualified Bid, and which Qualified Bid constitutes the highest and otherwise best offer, in its sole discretion. If any disputes exist, the U.S. Bankruptcy Court will have the final say on what constitutes the highest and best bid.

5.15    Auction: If a Qualified Bid, other than that submitted by Alberta Star, has been received by the Debtor, the Debtor shall conduct an auction of its common stock on April 21, 2010, at 8:00 a.m. Pacific Standard Time (11:00 a.m. Eastern Standard Time) at the offices of Elsaesser Jarzabek Anderson Marks & Elliott, Chtd., 1400 Northwood Center Court, Suite C, Coeur d'Alene, Idaho 83814. The Debtor shall provide the proposed purchaser, and all Qualified Bidders, with copies of all Qualified Bids no later than April 20, 2010, at 5:00 p.m. Pacific Standard Time (8:00 p.m. Eastern Standard Time). The Authorization, Proof of Financial Ability, Disclosure and Further Information shall be kept confidential and remain with Debtor. If no Qualified Bids are received other than the "stalking horse" bid, no auction will take place, and the Debtor will request that the Bankruptcy Court approve the sale to the proposed purchaser at the confirmation hearing. If there are Qualified Bids other than the proposed purchaser, the Debtor shall hold an auction where bidding shall initially begin with the highest Qualified Bid as determined by the Debtor. Any bids after the highest Qualified Bid shall be made

SECOND AMENDED PLAN
OF REORGANIZATION                -19-

in increments of at least $250,000.00. Any bids by the proposed purchaser will only be required to be equal to the then existing highest and best bid, as such bid shall be deemed higher as no breakup fee shall be paid.

Unless otherwise agreed to by the Debtor, no Qualified Bidder will be permitted more than one-half hour to respond to the previous highest and best bid at the auction. At the expiration of such time for all Qualified Bidders, the bidding shall conclude. Upon conclusion of the bidding the auction shall be closed, the Debtor shall announce and advise all Qualified Bidders of the winning bid. The Qualified Bidder whose final bid is deemed by the Debtor to be the highest or best bid, following the conclusion of the auction, will be the winning bid or "Successful Bidder". The next highest and best bid will be the "Backup Bid". Final documents between the Debtor and the Successful Bidder and the Backup Bidder will be executed on the same day of the auction. **Each bid submitted shall constitute an irrevocable offer and be binding on the Successful Bidder and the Backup Bidder.**

5.16    Confirmation Hearing: The Debtor intends to sell the common stock of Sterling Mining Company to the highest and best bidder ("Successful Bidder") through confirmation of Sterling Mining Company's Chapter 11 Plan of Reorganization. The confirmation hearing shall be conducted by the U.S. Bankruptcy Court on May 3, 2010, at 10:00 a.m., Pacific Standard Time, at 6450 N. Mineral Drive, Coeur d'Alene, ID 83815, or as continued thereafter, at which time the Debtor will seek Bankruptcy Court approval of the sale of the common stock and confirmation of the Chapter 11 Plan of Reorganization. To the extent there are any disputes as to what constitutes the "highest and best" bid, the Court will have the final say. There will be no further bidding at such

SECOND AMENDED PLAN
OF REORGANIZATION            -20-

hearing.  In the event that the Successful Bidder fails to consummate the sale, the Debtor shall be permitted to close with the Backup Bidder without further order of the Court.

5.17   Terms of Sale:   **THE SALE OF THE COMMON STOCK OF STERLING MINING COMPANY SHALL BE FREE AND CLEAR AND ON AN AS IS, WHERE IS, BASIS AND WITHOUT ANY REPRESENTATIONS, COVENANTS OR WARRANTIES OF ANY KIND, NATURE OR DESCRIPTION BY THE DEBTOR OR ITS AGENTS, AND BY SUBMITTING A BID, EACH QUALIFIED BIDDER IS DEEMED TO HAVE ACKNOWLEDGED AND AGREED TO THE FOREGOING.   TERMS SHALL BE CASH PAID AT CLOSING.  ALL CASH SHALL BE IN U.S. DOLLARS.**

5.18   Return of Deposits:   Each deposit submitted pursuant to the bidding procedures will be held in escrow until the selection of the Successful Bidder and the Backup Bidder, as to all other Qualified Bidders, or as to the Backup Bidder, forty-eight (48) hours after the Backup Bid is terminated in accordance with the provisions above, at which time such escrowed deposits shall be returned.

**If the Successful Bidder or the Backup Bidder fail to consummate an approved sale, the Debtor shall be entitled to retain the deposit as its damages resulting from the breach or failure.**  The Debtor may, at its sole option, credit the deposit of the Successful Bidder or the Backup Bidder towards the purchase price on the closing of the sale of the common stock.

**5.19   Alternate Bid Procedure for Sale of Assets of Sterling:**   The Debtor reserves the right to consider and accept qualified bids for 100% of the assets of Sterling, as opposed to 100% of the stock of Sterling.  As of the date of this alternative bid

SECOND AMENDED PLAN
OF REORGANIZATION            -21-

procedure, all potential bidders have been identified on the February 15, 2010, deadline for deposits, and the time for identification of bidders has expired; no new potential bidders can now be identified.

Any bids for 100% of the assets of Sterling, as opposed to 100% of the stock of Sterling, shall be subject to all of the provisions of Article V with the exception that assets will be sold rather than common stock. A bid for the purchase of the assets of Sterling does not disqualify the potential bidder, and any such bid shall be considered by Sterling as to whether or not it, combined with the other qualified bids, constitutes the highest and best offer.

All bids for the purchase of the common stock of Sterling, or for all assets of Sterling, shall be placed before the Court for approval at the confirmation hearing scheduled for May 3, 2010, at 10:00 a.m. Any bids for the purchase of all of Sterling's assets shall be placed before the Court pursuant to the provisions of this Plan and 11 U.S.C. § 363. To the extent the highest and best bid is for all of the assets of Sterling, as opposed to the stock, the Successful Bidder shall be obligated, as if such Successful Bidder purchased the common stock of Sterling, to defend, hold harmless and indemnify the Debtor, the Reorganized Debtor and the Litigation Trust from any preexisting, or later filed, adversary proceedings or appeal issues, which defense would have run to the Reorganized Debtor, and be responsible for any delinquent S.E.C., I.R.S., or other filings, that would remain with the Reorganized Debtor.

## ARTICLE VI
## MEANS FOR EXECUTION OF THE PLAN

6.      The Debtor, the Estate, the Litigation Trust and the Reorganized Debtor shall each perform or shall have performed all the acts required of them by this Plan and

SECOND AMENDED PLAN
OF REORGANIZATION                    -22-

the Order of Confirmation above, (unless the Debtor, the Estate, the Litigation Trust and the Reorganized Debtor shall agree to perform such acts at an earlier time) on the Effective Date of the Plan. Concurrent with confirmation, the Debtor shall pay all defaults/arrearages and assume the Sunshine Mine Lease.

6.1    On the Effective Date all assets of the Estate other than the proceeds from the sale of stock and the Litigation Trust claims, shall be vested in the Reorganized Debtor, free and clear, in accordance with 11 U.S.C. § 1141. The Reorganized Debtor shall be free to manage its affairs with no further court intervention.

6.2    The Reorganized Debtor shall continue to operate in the ordinary course of business following confirmation of this Plan.

6.3    On or prior to the Effective Date, the Litigation Trust shall be created as provided in the Litigation Trust Agreement for the benefit of holders of Allowed Unsecured Claims. Upon closing of the sale of the Property, the sales proceeds shall be paid to the Litigation Trust, with $100,000.00 thereof to be used to fund expenses of Litigation Trust, including the cost of prosecuting the Litigation Trust Claims. On or prior to the Effective Date, the Litigation Trust Claims shall vest in the Litigation Trust. The Litigation Trustee shall be selected by the Debtor, and shall be approved by the Court, after notice of hearing and right to object, but no later than fifteen (15) days after Confirmation. The Litigation Trustee shall have and perform all of the rights, powers, and duties set forth in the Litigation Trust Agreement, including prosecuting the Litigation Trust Claims, making distributions to holders of Allowed Claims pursuant to the provisions of this Plan, and filing and pursuing objections to claims. Following the Effective Date, the Litigation Trust may commence adversary proceedings against

SECOND AMENDED PLAN
OF REORGANIZATION                    -23-

persons or entities to realize upon the Litigation Trust Claims. Any settlements of Litigation Trust Claims shall be subject to review by the Bankruptcy Court, after appropriate notice and hearing in accordance with the Bankruptcy Rules.

The Litigation Trust will not be responsible for any preexisting, or later filed, adversary proceedings or appeal issues against Debtor, which defense will run to the Reorganized Debtor. The Reorganized Debtor will also be responsible for any delinquent regulatory filings of Debtor.

6.4    Any objection to a claim by the Litigation Trustee or a party in interest in the Reorganization Case must be filed on or before one hundred twenty (120) days following the Effective Date unless said time period is extended by the Bankruptcy Court for cause shown; provided, however, that the foregoing limitation does not apply to any claims filed subsequent to Confirmation.

6.5    Pursuant to § 347(b) of the Bankruptcy Code, 90 days after any distribution by the Litigation Trustee provided for herein, the Litigation Trustee shall stop payment on any check remaining unpaid and any funds shall be returned to the Litigation Trust. From and after the date the Litigation Trustee stops payment on any distribution check pursuant to this paragraph 6.5, the holder of the claim on account of which such check was issued shall be entitled to receive no further distributions on account of his claim and such holder's Allowed Claim shall thereupon be deemed satisfied in full.

6.6    The deadline for submission of all claims entitled to priority pursuant to § 507 of the Bankruptcy Code incurred prior to Confirmation, with the exception of fees and costs of Professional Persons, shall be 30 days following Confirmation. Failure to

SECOND AMENDED PLAN
OF REORGANIZATION                    -24-

file a claim by this date shall conclusively bar the claimant from asserting his claim, which claim shall be forever discharged.

6.7     Any negotiable instrument held by the holder of an impaired Allowed Claim shall be deemed exchanged, canceled, or satisfied, as the case may be on the Effective Date.

6.8     On the Effective Date, the Debtor, the Reorganized Debtor, and the Successful Bidder and its affiliates shall not have, and do not assume, any liability or obligation for any claims or equity interests, except executory contracts previously assumed and the Sunshine Lease, and are not required or obligated to pay any claims or equity interests under this Plan, including administrative claims, priority tax claims, and claims and equity interests treated in Classes 1 through 8 of this Plan. The Litigation Trust is the sole source of payments and distributions to holders of claims under this Plan.

6.9     On the Effective Date, all liens on any property of the Debtor or the Reorganized Debtor shall automatically terminate, all collateral subject to such liens shall be automatically released and all guarantees of the Debtor shall be automatically discharged and released; *provided, however,* that such liens shall attach to the proceeds from the sale of the Property pending payment of valid lien holders' claims out of such proceeds.

## ARTICLE VII
### EXECUTORY CONTRACTS AND UNEXPIRED LEASES

7.     All executory contracts and unexpired leases of the Debtor, not heretofore assumed or rejected, shall be rejected by the Reorganized Debtor on the Effective Date. Concurrent with, or prior to, confirmation, the Debtor shall assume the Sunshine Mine Lease.

SECOND AMENDED PLAN
OF REORGANIZATION                    -25-

ARTICLE VIII
SATISFACTION OF INDEBTEDNESS AND DISCHARGE OF CLAIMS

8.      On the Effective Date, the Debtor, its Estate, the Reorganized Debtor and their respective assets, properties and interests in property are automatically and forever discharged and released from all claims and vested Free and Clear to the fullest extent permitted under § 1141 of the Bankruptcy Code. Except as otherwise expressly provided in this Plan or the Order of Confirmation, the rights afforded in this Plan and the treatment of all claims and equity interests under this Plan are in exchange for and in complete satisfaction, discharge, and release of all claims and equity interests of any nature whatsoever, against the Debtor, its Estate, the Reorganized Debtor, and their respective assets, properties, or interests in property. Except as otherwise provided in this Plan or Order of Confirmation, Confirmation shall discharge the Debtor, its Estate and the Reorganized Debtor from all claims or other debts that arose before the Effective Date, whether or not (i) the claim was scheduled, (ii) a proof of claim was filed, (iii) the claim is an Allowed Claim, or (iv) the holder thereof voted to accept this Plan.

The provisions of this Plan shall bind all holders of claims and equity interests and their respective successors and assigns, whether or not they accept this Plan. On and after the Effective Date, except as expressly provided in this Plan, all holders of claims and equity interests shall be precluded from asserting any claim, cause of action or lien against the Debtor, its Estate, the Reorganized Debtor, the Successful Bidder, the Litigation Trust, the Litigation Trustee or their respective assets, properties or interests in

SECOND AMENDED PLAN
OF REORGANIZATION                -26-

property based on any act, omission, event, transaction or other activity of any kind that occurred or came into existence prior to the Effective Date.

*Except as otherwise expressly provided in this Plan, the discharge and release set forth in Article VIII shall operate as an injunction permanently prohibiting and enjoining the commencement or continuation of any action or the employment of process with respect to, or any act to collect, recover from, or offset (i) any claim discharged and released in Article VIII, and (ii) any cause of action, whether known or unknown, based on the same subject matter as any claim discharged and released in Article VIII.*

As to the United States, its agencies, departments, or agents (collectively, the "United States"), nothing in this Plan or the Order of Confirmation discharges, releases, or precludes: (i) any environmental liability to the United States that is not a Claim; (ii) any environmental Claim of the United States arising on or after the Confirmation Date; (iii) any environmental liability to the United States on the part of the Debtor or Reorganized Debtor as the owner or operator of real property after the Confirmation Date, or (iv) any environmental liability to the United States on the part of any Person other than the Debtor or Reorganized Debtor. Nor shall anything in this Plan or the Order of Confirmation enjoin or otherwise bar the United States from asserting or enforcing, outside this Court, any liability described in this paragraph.

## ARTICLE IX
### MODIFICATIONS OF THE PLAN

9.    Pursuant to the provisions of § 1127 of the Bankruptcy Code and Bankruptcy Rule 3019, the Debtor reserves the right to modify or alter the provisions of the Plan at any time prior or subsequent to Confirmation.

ARTICLE X

RETENTION OF JURISDICTION BY THE BANKRUPTCY COURT

10.    Notwithstanding Confirmation, until entry of a final decree, the Bankruptcy Court shall retain jurisdiction to ensure that the purposes and intent of this Plan are carried out.  Without limiting the generality of the foregoing, the Court shall retain jurisdiction for the following purposes:

10.1    Fixing and allowing any claim as a cost and expense of the administration of the Reorganization Case;

10.2    Reexamining any claim that has been allowed;

10.3    Hearing and determining any objection to a claim or interest.  The failure of the Debtor to object to, or to examine any claim or equity security interest for the purpose of voting, shall not be deemed to be a waiver of any party in interest's right to object to, or re-examine any claim or equity security interest in whole or in part;

10.4    Hearing and determining any action brought by the Debtor, Litigation Trust or the Estate seeking to avoid any transfer of an interest of the Debtor in property, or any obligation incurred by Debtor, that is avoidable pursuant to applicable law;

10.5    Hearing and determining all causes of action, controversies, disputes, or conflicts between or among the Litigation Trustee, the Reorganized Debtor and any other party, including those that were pending prior to Confirmation, including all disputes relating to the Sunshine Mine Lease;

10.6    Hearing and determining all questions and disputes regarding title to the property of the Debtor, the Reorganized Debtor and the Litigation Trust;

SECOND AMENDED PLAN
OF REORGANIZATION                -28-

10.7    Correcting any defect, curing any omission, making modifications or reconciling any inconsistency in the Plan or the Order of Confirmation as may be necessary to carry out the purpose and intent of the Plan;

10.8    Entering and implementing orders or taking such other actions as may be necessary or appropriate to restrain interference by any entity with the consummation or implementation of this Plan, including, without limitation, to issue, administer, and enforce injunctions, releases, assignments, transfers of property or property rights, or other obligations contained in this Plan and the Order of Confirmation;

10.9    Issuing any order necessary to implement the Plan or Order of Confirmation, including, without limitation, such declaratory and injunctive orders as are appropriate to protect the Debtor, the Reorganized Debtor, the Litigation Trust, the Successful Bidder and the Estate, from actions of creditors, equity security holders, or other parties in interest;

10.10   Hearing and determining any dispute relating to the terms or implementation of the Plan or Order of Confirmation, or to the rights or obligations of any parties in interest with respect thereto;

10.11   The modification of the Plan after Confirmation pursuant to the Bankruptcy Rules and the Bankruptcy Code in accordance with Article X above;

10.12   Hearing and determining any other matter not inconsistent with the Bankruptcy Code and title 28 of the United States Code that may arise in connection with or related to this Plan; and

10.13   Entering orders concluding and terminating the Reorganization Case.

SECOND AMENDED PLAN
OF REORGANIZATION                    -29-

DATED this _15th_ day of March, 2010.

STERLING MINING COMPANY

Robert Higdem, Director and General Manager

ELSAESSER JARZABEK ANDERSON
MARKS & ELLIOTT, CHTD.

Bruce A. Anderson,
Attorney for Debtor-in-Possession

SECOND AMENDED PLAN
OF REORGANIZATION                -30-