Ford Elsaesser, ISB #2205
Bruce A. Anderson, ISB #3392
ELSAESSER JARZABEK ANDERSON
MARKS & ELLIOTT, CHTD.
Attorneys at Law
1400 Northwood Center Court
Coeur d'Alene, ID  83814
Tel:    (208) 667-2900
Fax:   (208) 667-2150

Attorney for Debtor-in-Possession

UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF IDAHO

| In Re:<br><br>STERLING MINING COMPANY,<br>Debtor-in-Possession | Case No. 09-20178-TLM |
|---|---|

MEMORANDUM IN SUPPORT OF PROTECTIVE MOTION FOR SALE BY
STERLING UNDER 11 U.S.C. §§ 363(f) and 365(f)

---

COMES NOW Sterling Mining Company ("Sterling" or the "Debtor"), by and through undersigned counsel, and submits this memorandum in support of its Protective Motion for Sale by Debtor-in-Possession under 11 U.S.C. §§ 363(f) and 365(f) (the "Motion"). In the Motion, Sterling has requested authority for the sale of 100% of its assets and the assignment of its assumed executory contracts and unexpired leases (the "Assets"), free and clear of liens, claims, encumbrances and other interests, at the upcoming auction in the event the highest and best bid is for assets rather than stock.

## JURISDICTION AND VENUE

The Court has jurisdiction to consider the relief requested in the Motion pursuant to 28 U.S.C. § 1334(b). This matter is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue is proper under 28 U.S.C. §§ 1408 and 1409.

## PROCEDURAL BACKGROUND

On March 3, 2009, the Debtor filed a voluntary petition under Chapter 11 of the Bankruptcy Code. Pursuant to §§ 1107 and 1108 the Debtor continues to operate and manage its affairs as a debtor-in-possession. No trustee or examiner has been appointed in this case.

On March 15, 2010, the Debtor filed its Second Amended Plan of Reorganization (the "Plan"). The Plan provides for the sale of 100% of the stock in Sterling to the highest and best bidder (the "Successful Bidder") at the auction to be held on April 21, 2010 at 8:00 a.m. Pacific Time. However, in Section 5.19 of the Plan, Sterling reserves the right to consider and accept qualified bids for the sale of 100% of its Assets. The Debtor has been advised that one or more of the Potential Bidders may submit bids on the Assets.

If the Debtor determines that the highest and best bid is for the Assets, Sterling may ask the Court to approve the sale of the Assets, free and clear of liens, claims, encumbrances and other interests, pursuant to Section 363(f), and assign assumed leases pursuant to Section 365(f), to the Successful Bidder at the hearing which is to be held on May 3, 2010 at 10:00 a.m. Pacific Time or as continued thereafter, which is also the scheduled date for the hearing on confirmation of Sterling's Second Amended Plan of Reorganization.

## ARGUMENT

The statutory authority for sale of property of the estate outside the ordinary course of business is found in section 363(b) and (f) of the Bankruptcy Code. Section 363(b) of the Bankruptcy Code provides that "[t]he trustee, after notice and hearing, may use, sell or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1).

Although the Bankruptcy Code does not set forth a standard for determining when it is appropriate for a court to authorize the sale of property under section 363(b) of the Bankruptcy Code, courts have uniformly held that approval of such a sale is appropriate if the sale is supported by a good business reason. *See, e.g., Institutional Creditors of Continental Air Lines, Inc. v. Continental Air Lines Inc. (In re Continental Air Lines, Inc.)*, 780 F.2d 1223, 1226 (5th Cir. 1986); *Committee of Equity Sec. Holders v. Lionel Corp. (In re Lionel Corp.)*, 722 F.2d 1063, 1071 (2d Cir. 1983).

The Debtor believes that the proposed sale of the Assets to the Successful Bidder is supported by sound business justification. If approved, the sale will bring in substantial value for the Assets. As set forth in greater detail in the Plan, the bidding procedures require the entity that is ultimately the Successful Bidder to provide consideration totaling over $12,500,000.00 for the Assets, which is the amount of Minco Silver Corporation's current overbid for 100% of the stock in Sterling.

Since Minco made its bid of $12.5 million, it has committed to an additional $2.0 million in financing for additional operating capital, and to pay off net smelter royalty penalty to the Coeur d'Alene Tribe and U.S. Environmental Protection Agency. It is assumed that Minco's bid, encapsulating its credit bid, will eventually exceed $14.5 million. It is Debtor's goal to

bring to this Court a bid that exceeds all secured claims against the property, and provides a fair and reasonable dividend to the unsecured general claimants.

The Debtor further submits that such consideration is both fair and reasonable. Furthermore, to dispel any doubt, the sale of the Assets is subject to competing bids, thereby enhancing the Debtor's ability to receive the best value for the stock or the Assets. Consequently, the fairness and reasonableness of the consideration to be received by the Debtor ultimately will be demonstrated by a "market check" through an auction process, which is the best means for establishing whether a fair and reasonable price is being paid.

Moreover, the sale of Assets is provided for in the Plan. *See* 11 U.S.C. § 1123(a)(5) (requiring a plan to provide adequate means for its implementation, including sale of all property of the estate free of any lien). Sterling has given notice that it would consider the sale of Assets, versus the sale of stock, through the bid procedures so long as the Asset sale is on par with the sale of stock, meaning that all Assets are sold and the Successful Bidder be responsible for ongoing liabilities as though they bought the stock of Sterling. It is Sterling's fiduciary obligation to maximize the return on the sale of its stock, or Assets as the case may be. All potential bidders are given the opportunity to bid for stock or Assets pursuant to the Bid Procedures. This flexibility runs to the benefit of Sterling's creditors.

Finally, all creditors and parties in interest (including those parties potentially interested in bidding on the stock or Assets and others whose interests are potentially implicated by the sale) have previously received adequate notice of the bidding procedures, the auction, and the proposed sale of the Assets. The Debtor submits that such notice is sufficient for entry of an order approving the sale, if there is such a sale, and satisfies notice conditions for approval of the

sale under section 363(b) of the Bankruptcy Code. This further motion provides additional notice for protective purposes only, since the auction has not yet taken place.

Under these circumstances, sound business reasons exist that justify the sale of the Assets outside the ordinary course of business. Accordingly, the Debtor submits that the proposed sale of the Assets to the Successful Bidder pursuant to section 363 of the Bankruptcy Code should be approved in the event that the Debtor determines, after auction, that the highest and best bid is for the Assets, rather than the stock.

The Debtor requests that, in that event, the Court authorize the sale of the Assets free and clear of any and all liens, claims, charges, encumbrances or other interests (the "Claims"), which may be asserted or otherwise exist, with any such Claims to attach to the proceeds of the sale of the Assets, subject to the rights and defenses of the Debtor, if any, with respect thereto. The Debtor is not aware of any Claims on the Assets, other than the liens listed in the Motion. Pursuant to the Plan, it is Debtor's intention that all such claims shall be cleared through the Plan distribution procedures.

Under section 363(f) of the Bankruptcy Code, a debtor-in-possession may sell property free and clear of any lien, claim or interest in such property if:

    (1) applicable nonbankruptcy law permits sale of such property free and clear of such interest;

    (2) such entity consents;

    (3) such interest is a lien and the price at which such property is sold is greater than the aggregate value of all liens on such property;

    (4) such interest is in bona fide dispute; or

    (5) such entity could be compelled, in a legal or equitable proceeding to accept money satisfaction of such interest.

11 U.S.C. § 363(f).

It is Debtor's goal and belief that the auction will bring amounts in excess of that needed to pay all secured claims in full, and provide the unsecured general claimants with a dividend on their claims. Once the auction takes place, Debtor will have additional information to provide this Court, and is aware of the requirements of 11 U.S.C. § 363(f), as well as extant case law such as the Clear Channel case (*In re PW, LLC,* 391 B.R. (9th Cir.BAP 2008)), and its interpretation of 11 U.S.C. 363(f) and application to any sale herein. Upon conclusion of the auction, and after submitting the addendum to the motion to the Court, it is believed that all statutory and extant case law will be satisfied. Further, the claims will be satisfied from the proceeds of the sale with distributions made pursuant to the Plan.

Pursuant to section 365(f) of the Bankruptcy Code, the debtor-in-possession may assign executory contracts and unexpired leases that have been assumed by the debtor to an assignee if adequate assurance of future performance by the assignee of such contracts and leases is provided. It is Sterling's intent, if assets are sold, to assign such contracts including the Sunshine Lease. In the event that the Debtor proceeds with a sale of its Assets, evidence of the Successful Bidder's ability to perform under the contracts and leases in the future will be provided at the hearing to approve the sale.

## CONCLUSION

If Sterling determines that the highest and best bid received at the Auction is for Assets, the Debtor asks that the Court approve the sale and assignment of the Assets, free and clear of liens, claims, encumbrances and other interests, to the Successful Bidder. The Debtor herein has set forth authorities supporting its request and seeks to further the goal of providing unsecured

creditors with the highest possible dividend on their claims. For these reasons, Sterling requests that this Motion be granted.

Dated this 25th day of March, 2010.

ELSAESSER JARZABECK ANDERSON MARKS
ELLIOTT & MACDONALD, CHTD.

_____
Bruce A. Anderson, Attorney for Sterling
Mining Company
