IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| In re: ) | |
| ) | Bk. Case No. 09-20178-TLM |
| Sterling Mining Company, ) | |
| ) | |
| Debtor. ) | |
| ) | |
| ) | |
| SUNSHINE PRECIOUS METALS, INC., ) | |
| ) | |
| Appellant, ) | |
| ) | **MEMORANDUM ORDER** |
| vs. ) | |
| ) | Case No. CV09-465-N-EJL |
| STERLING MINING COMPANY, ) | |
| ) | |
| Appellee. ) | |
| ) | |

Pending before the Court in the above-entitled matter is Appellant Sunshine Precious Metals, Inc.'s appeal from the decisions of Bankruptcy Judge Terry L. Myers approving the lease assumption and ordering it to deliver possession. The parties have submitted their responsive briefing and the matter is now ripe for the Court's review. Having fully reviewed the record herein, the Court finds that the facts and legal arguments are adequately presented in the briefs and record. Accordingly, in the interest of avoiding further delay, and because the court conclusively finds that the decisional

process would not be significantly aided by oral argument, this matter shall be decided on the record before this court without oral argument.

## FACTUAL BACKGROUND

On March 3, 2009, Debtor-Respondent Sterling Mining Company filed a voluntary chapter 11 bankruptcy petition that listed as an asset to the bankruptcy estate an interest in a lease agreement pertaining to the Sunshine Mine located in Kellogg, Idaho (the "Mine"). Appellant Sunshine Precious Metals, Inc. owns the Mine which it had leased to the Debtor under the terms of a written lease agreement (the "Lease") since 2003. On March 25, 2009, Debtor filed a motion to assume the lease under Bankruptcy Code § 365 and a motion for turnover possession of the Mine. The Bankruptcy Court issued Memorandums of Decision and Orders granting both motions which are the basis of this appeal.[1] Appellant argues the Bankruptcy Court erred in its factual and legal determinations.

## STANDARD OF REVIEW

Factual findings of the Bankruptcy Court are reviewed by this court by applying a "clearly erroneous" standard. Fed. R. Bankr. P. 8013. Legal conclusions of the Bankruptcy Court are subject to a *de novo* review by this Court. Fed. R. Bankr. P.

---

[1] The Appellant originally appealed three orders from the Bankruptcy Court but has since withdrawn its challenge to the Order granting the Debtor's motion to incur post-petition financing. (Dkt. No. 14, p. 2).

**MEMORANDUM ORDER** - Page  2
10orders/sunshine_bk.wpd

8013. As a general rule, the Court will not consider an issue raised for the first time on appeal. United States v. Robinson, 20 F.3d 1030 (9th Cir. 1994).

## ANALYSIS

I.  Mootness

Debtor argues this appeal is moot or subject to dismissal on equitable grounds. (Dkt. No. 16, p. 7). A reversal of the Bankruptcy Court's decisions at this stage, Debtor asserts, would create an unmanageable situation given the actions taken by the parties in reliance upon those decisions. In sum, the Debtor contends that a reversal would reverse several transactions, financing, and payments made to third parties. Appellant counters that the appeal is not moot because the Debtor has not shown that it is impossible for the Court to provide some effective relief.

"In general, the party asserting mootness 'has the heavy burden of establishing that there is no effective relief remaining for a court to provide.'" Suter v. Goedert, 504 F.3d 982, 986 (9th Cir. 2007) (citations omitted). Although the Debtor here has presented a compelling case, the Court finds the appeal is not moot because it seems possible to award relief to the Appellant were it to prevail on the appeal. It is true that much has occurred in reliance upon the Bankruptcy Court's decisions and orders. Relief from those decisions, however, still may be possible. Accordingly, the Court will consider the merits of the appeal.

**MEMORANDUM ORDER** - Page 3
10orders/sunshine_bk.wpd

    II.    <u>Termination of the Lease</u>

Appellant argues the Bankruptcy Court erred in finding that the parties had not terminated the Lease. Pointing to facts occurring mainly in February of 2009, Appellant contends the intent of the parties to terminate the Lease was evidenced by the conduct and statements of the parties. The Bankruptcy Court considered the events argued by the Appellant but concluded that the parties had not terminated the Lease. (BK Dkt. No. 131, ER000623). In particular, the Bankruptcy Court noted that the statements and actions made in February of 2009 were in anticipation of termination but that ultimately the final termination never occurred. (BK Dkt. No. 131, ER000623).

This Court has reviewed the record in this matter and finds the Bankruptcy Court's decision did not clearly error in reaching its factual findings on this issue. Just the opposite, this Court is in agreement with the Bankruptcy Court's determinations and finds it properly decided the facts of this case. Contrary to Appellant's position, the facts show that the Lease had not been terminated either by operation of law or by mutual agreement of the parties. Instead, the statements and actions of the parties reveal their intent was to effectuate a termination of the Lease in the future but the anticipated termination never came to pass. The February 17-19, 2009 board meetings, conversations, writings, and actions all evidence that the termination was discussed, anticipated, and forthcoming but never happened. (ER 200-05, 581-604, 619A, 619B,

623-657, 631, 632). There was no clear error by the Bankruptcy Court. Further, the Bankruptcy Court's interpretation and application of the relevant law applicable to this issue is consistent with this Court's *de novo* review of the same. As such, this Court affirms the Bankruptcy Court's decision.

III.     Application of Bankruptcy Code § 365

The Bankruptcy Court put "the cart before the horse," Appellant argues, by failing to determine the extent of the Debtor's pre-assumption defaults before approving the assumption of the Lease. (Dkt. No. 14). Appellant claims error in the Bankruptcy Court's decision approving Debtor's assumption of the Lease because it erred in its application of Bankruptcy Code § 365 by: 1) applying § 365(b)(1)(C) instead of § 365(b)(1)(A); 2) not determining the amount of Debtor's defaults; and 3) not determining that the defaults could be cured. (Dkt. No. 14). In particular, Appellant argues: 1) the amount of the defaults owed to the EPA and the Tribe were not determined or cured; 2) the amount of default in the net smelter return royalty was not determined or cured; and 3) the environmental remediation obligations. Debtor counters that the Bankruptcy Court did determine the amount of debtor's faults and whether faults could be cured in the context of a lease assumption. In addition, Debtor argues there is no practical difference between subsections (A) and (C) of § 365(b)(1) and, therefore, any error is harmless.

A.	Section 365 (b)(1)

Bankruptcy Code § 365 governs the treatment of a debtor's executory contracts and unexpired leases by allowing the debtor, with court approval and subject to some exceptions, to assume or reject any executory contract or unexpired lease of the debtor. 11 U.S.C. § 365(a). At issue here is subsection (b)(1), which states:

> (b)(1) If there has been a default in an executory contract or unexpired lease of the debtor, the trustee may not assume such contract or lease unless, at the time of assumption of such contract or lease, the trustee–
>
> (A) cures, or provides adequate assurance that the trustee will promptly cure, such default other than a default that is a breach of a provision relating to the satisfaction of any provision (other than a penalty rate or penalty provision) relating to a default arising from any failure to perform nonmonetary obligations under an unexpired lease of real property, if it is impossible for the trustee to cure such default by performing nonmonetary acts at and after the time of assumption, except that if such default arises from a failure to operate in accordance with a nonresidential real property lease, then such default shall be cured by performance at and after the time of assumption in accordance with such lease, and pecuniary losses resulting from such default shall be compensated in accordance with the provisions of this paragraph;
>
> (B) compensates, or provides adequate assurance that the trustee will promptly compensate, a party other than the debtor to such contract or lease, for any actual pecuniary loss to such party resulting from such default; and
>
> (C) provides adequate assurance of future performance under such contract or lease.

11 U.S.C. § 365(b)(1). Appellant argues the Bankruptcy Court erred in applying § 365(b)(1)(C) instead of § 363(b)(1)(A). The difference between the two, Appellant contends, is subsection (A)'s strict procedure requiring the Bankruptcy Court to determine the amount of Debtor's defaults and to adjudicate whether the Debtor could cure or provide adequate assurance of prompt cure of its defaults. (Dkt. No. 19, p. 20). Maintaining that a "cure" to any defaults is a precondition to assumption under the Bankruptcy Code. (Dkt. No. 14, p. 18). Debtor counters that the Bankruptcy Court properly applied the law in its order and that, regardless, any error is harmless because the Bankruptcy Court made the appropriate determinations. (Dkt. No. 16, p. 22-26).

Having reviewed the record in this matter *de novo*, the Court finds the Bankruptcy Court properly applied the law in its decision. In reaching its decisions on the motions, the Bankruptcy Court undertook a lengthy discussion of the Debtor's defaults and determined whether the Debtor had shown reasonable assurances that it could cure the defaults. The Court will discuss the particular defaults objected to by the Appellant below.

  B. <u>Amount of the Net Smelter Return Royalty Defaults</u>

Appellant argues the Bankruptcy Court in its application of § 365(b)(1)(A) in regards to the net smelter return royalties due under the Lease because it failed to determine the amount of defaults and whether they could be cured prior to assumption

**MEMORANDUM ORDER** - Page 7
10orders/sunshine_bk.wpd

of the Lease as required by § 365(b)(1)(A). (Dkt. No. 14, p. ).The defaults involve the net smelter return royalty payments required by the Lease to be paid to the EPA and Tribe under the consent decree. Debtor counters that the Bankruptcy Court did set the amount of the royalty claim at $382,020.95 which all parties have agreed is the amount due to cure the default. (Dkt. No. 16, pp. 21-22). In reply, Appellant maintains that the Debtor failed to bear its burden of proof required under § 365. (Dkt. No. 19, pp. 20-22).

The Bankruptcy Court's decision considered the consent decree payments as a monetary default and determined the amount of the default to be $382,020.95 as conceded to by the Debtor. (Dkt. No. 326, p. 12, ER000734). The Bankruptcy Court accepted this amount. This Court finds no clear error in this determination. Appellant finds fault with this determination arguing the Bankruptcy Court failed to hold that one of the other parties could assert the unpaid amount of the royalties were higher and failed to adjudicate the true amount of the prepetition default which is likely more than the $382,020.95.

Assumption "is subject to court approval based on a review of the totality of the circumstances." In re Wireless Data, Inc., 547 F.3d 484, 489 (2nd Cir. 2008) (citing In re Orion Pictures Corp., 4 F.3d 1095, 1099 (2d Cir.1993) ("[A] bankruptcy court reviewing a trustee's or debtor-in-possession's decision to assume or reject an executory contract [pursuant to § 365] should examine a contract and the surrounding

**MEMORANDUM ORDER** - Page  8
10orders/sunshine_bk.wpd

circumstances and apply its best 'business judgment' to determine if it would be beneficial or burdensome to the estate to assume it."). "For a bankruptcy court to make a responsible determination as to an assumption application, it is important for the court to know the universe of claims arising under the contracts to be assumed." Id. at 489 (citation omitted).

Section 365(b)(1) requires that, "[i]f there has been a default in an executory contract or unexpired lease of the debtor, the trustee may not assume such contract or lease unless, at the time of assumption of such contract or lease, the trustee-(A) cures, or provides adequate assurance that the trustee will promptly cure, such default ...; (B) compensates, or provides adequate assurance that the trustee will promptly compensate, a party other than the debtor to such contract or lease, for any actual pecuniary loss to such party resulting from such default; and (C) provides adequate assurance of future performance." In re C.W. Min. Co., 2010 WL 841395 *8-9 (Bankr. D. Utah, 2010). "In turn, § 365(f)(2) provides that the Trustee 'may assign an executory contract or unexpired lease of the debtor only if-(A) the trustee assumes such contract or lease in accordance with the provisions of this section; and (B) adequate assurance of future performance by the assignee of such contract or lease is provided, whether or not there has been a default in such contract or lease.'" Id. "The Trustee has the burden to prove that the statutory requirements for assumption and assignment have been met, including

the burden to prove adequate assurance of future performance." Id. (citing In re M. Fine Lumber Co., Inc., 383 B.R. 565, 573 (Bankr. E.D.N.Y. 2008) (citation omitted).

"What constitutes adequate assurance is a factual question to be determined on a case by case basis with due regard to the nature of the parties, their past dealings and present commercial realities." Id. (citations omitted). "The required assurance will fall considerably short of an absolute guarantee of performance" and will be "adequate if performance is likely (i.e. more probable than not)." Id. (citations omitted). "It is clear that adequate assurances need not be given for every term of an executory contract" but for those terms that are 'material and economically significant.'" "It is proper to judge a proposed assignee's future performance by the financial strength of its backers and its operating agreements with experienced mine management companies."

Having conducted a *de novo* review of the applicable law and considering the factual findings of the Bankruptcy Court, this Court finds the Bankruptcy Court's decision is consistent with this Court's own view of the record and law in this case. Based on the evidence presented to the Bankruptcy Court, the Bankruptcy Court applied the appropriate law under § 365(b)(1)(A) requiring the Debtor to cure, or provides adequate assurance that it will promptly cure a default before assuming the lease. This Court further concludes the Bankruptcy Court properly found adequate assurance of future performance had been provided. Appellant's contention that the Bankruptcy Court

did not properly adjudicate the amount of the default is in error. Though true that it "is particularly important for a bankruptcy court to know to what degree a debtor is in default," the Bankruptcy Court did so here. In re Wireless Data, 547 F. 3d at 489 (citations omitted). The Debtor, EPA, and Tribe have agreed to the amount of the default on the unpaid net smelter return royalty. Moreover, Debtor asserts the claim has since been paid through post-petition financing approved by the Bankruptcy Court. (Dkt. No. 16, p. 22). Accordingly, the Court will affirm the Bankruptcy Court's decision as to the net smelter return royalty default.

### C. Amount of Net Smelter Return Royalty Penalty Defaults

Appellant argues the Bankruptcy Court erred in applying subsection (C) instead of (A) to the amount of the penalty default arising from Debtor's failure to pay the net smelter return royalties. (Dkt. No. 14, p. 22). The penalties, Appellant maintains, are existing obligations that Debtor was required to prove could be cured before the Lease could be assumed. In response, Debtor asserts that the amount of the penalty claim has been liquidated by settlement of the parties in the amount of $1,250,000.00 pending approval of the Bankruptcy Court. (Dkt. No. 16, p. 22). Debtor also argues the Bankruptcy Court did not error because § 365(b) contemplates future payments of claims that are not fully liquidated by requiring adequate assurance of future payments of default amounts.

**MEMORANDUM ORDER** - Page 11
10orders/sunshine_bk.wpd

In its opinion, the Bankruptcy Court considered the consent decree penalties as a monetary default valued at a possible penalty of $1,455,500.00. (Dkt. No. 326, p. 12-14, ER000734-36). In doing so, the Bankruptcy Court considered the testimony of several witnesses regarding the amount of such penalties as well as the possibility of the Debtor securing post-petition financing in light of the potentially large exposure to such penalties. Ultimately the Bankruptcy Court concluded that it is "impossible to ascribe a precise figure" to the penalty in light of the fact that it is unknown whether the EPA and the Tribe will assert claims to penalties and in what amount given the parties' negotiations. Thus, the Bankruptcy Court stated:

> Because the possible penalty of $1,455,500 is at present unasserted and unliquidated, there is no extant monetary default that must be cured. The penalty portion of the liability under the partial consent decree is therefore unlike the base royalty under the same decree, which the [Debtor] admits is a monetary default that must be cured. If a penalty is asserted, the [Debtor] will need to deal with the same. However, because the [Debtor] has provided testimonial evidence of preliminary commitments of additional post-petition financing, the Court concludes that – at the present time – this exposure to a potential penalty under the partial consent decree does not require denial of the § 365 Motion.

(Dkt. No. 326, p. 14, ER000736). In a footnote, the Bankruptcy Court addressed the issue of lack of notice to the Tribe. (Dkt. No. 326, p. 13 n. 21, ER000735). There the Bankruptcy Court stated:

> [T]hough the precise parameters of the EPA/Tribes' claim(s) under the penalty provisions of the partial consent decree have yet to be set, they

**MEMORANDUM ORDER** - Page 12
10orders/sunshine_bk.wpd

> will not be determined by the Court in the present aspect of the litigation. Such matters can be heard, as appropriate, at a later time and upon proper notice. The only issue, at present, is the magnitude of potential liability that must be considered under the adequate assurance of future performance provisions of § 365(b)(1)(C).

(Dkt. No. 326, p. 13 n. 21, ER000735).

This Court finds the Bankruptcy Court's actions properly applied the law to the facts of this case. In making its determination as to whether to grant the motion to assume the Lease, the Bankruptcy Court in this case clearly considered the magnitude of the possible default for the unpaid net smelter return royalties penalties noting the possible penalty was $1,455,500. (Dkt. No. 326, p. 14, ER000736). This is what is required of the Bankruptcy Court by § 365(b). In re Wireless Data, Inc., 547 F.3d at 489 ("For a bankruptcy court to make a responsible determination as to an assumption application, it is important for the court to know the universe of claims arising under the contracts to be assumed."). It was unnecessary for the Bankruptcy Court to set the amount of default needed to be cured at the time because the default was unasserted and unliquidated. What was required and done was that the Bankruptcy Court weigh the Debtor's future ability to cure such default were it to come to fruition. See In re Wireless Data, Inc., 547 F.3d at 489 (citing 11 U.S.C. § 365(b)(1)(A)-(C) (Under § 365(b), "a debtor must (1) cure the default, or provide adequate assurance that it will promptly cure it...."). The Bankruptcy Court appropriately made its determination about the Debtor's

**MEMORANDUM ORDER** - Page  13
10orders/sunshine_bk.wpd

ability to cure this default in the future if it were asserted based on the testimonial evidence of additional post-petition financing. This Court concludes the Bankruptcy Court's application of § 365(b) to the facts is correct and consistent with this Court's view of the record. The decision is affirmed.

      D.     <u>Environmental Remediation Obligations Defaults</u>

Appellant contends the Bankruptcy Court erred in applying § 365(b)(1)(C) to the environmental remediation obligations instead of § 365(b)(1)(A) which allowed assumption of the Lease without the Bankruptcy Court being required to quantify the amount of the existing environmental obligation or assuring that such amounts would be paid or cured. (Dkt. No. 14, p. 25). Appellant points to the "multimillion dollar environmental claim" filed by the EPA against the Debtor that remains unliquidated. (Dkt. No. 14, p. 25). Debtor argues the Bankruptcy Court's decision to treat any environmental claims as future performances considerations under § 365(b)(1)(C) was proper given the testimony offered at the hearing. (Dkt. No. 16, p. 26).

The Lease requires the Debtor to comply with Federal and State environmental laws and regulations. Appellant estimates the costs to evaluate and remediate the environmental problems at the Mine to be $1,511,500.00. The Bankruptcy Court heard argument from several experts on this issue. Ultimately it did not find Appellant's expert to be credible in his estimates and attributed $21,500.00 as the monetary default for the

**MEMORANDUM ORDER** - Page  14
10orders/sunshine_bk.wpd

environmental remediation that must be cured based on the testimony of Debtor's environmental manager. (Dkt. No. 325, pp. 18-19, ER000740-41). Appellant takes issue with the Bankruptcy Court's statements in footnote 26 of the opinion which states:

> These findings and conclusions do not necessarily mean that there are no environmental issues, only that the extent of any such issues were not proven in connection with establishing the amounts of monetary defaults that must be cured as a condition of assumption. The [Debtor] agrees that it must comply with the requirements of § 13.5 of the assumed Lease. That compliance almost certainly will have a cost as Robert Higdem's testimony concedes. The question at this stage is one of adequate assurance of future performance. Given the amounts presently proven, the [Debtor's] financing of future operations under the § 364 Motion and in light of the testimony regarding prospective funding, provides such assurance.

(Dkt. No. 326, pp. 18-19 n. 26, ER000740-41).

Having reviewed this portion of the decision, this Court concludes that the Bankruptcy Court did not cite either § 365(b)(1)(C) or § 365(b)(1)(A) in making its determination. Footnote 26 uses the term "adequate assurance of future performance," as used in subsection (C), but goes on to also discuss the "amounts presently proven" and the future financing. (Dkt. No. 326, pp. 18-19 n. 26, ER000740-41). Regardless, the Bankruptcy Court determined the amount of the default relating to environmental remediation to be $21,500.00 which, it concluded, can be assured based on the future financing secured by Debtor. Having reviewed the legal findings *de novo*, this Court

**MEMORANDUM ORDER** - Page  15
10orders/sunshine_bk.wpd

finds this finding is sufficient to satisfy the requirements of § 365(b)(1)(A).[2] The factual finding determining the amount of the environmental remediation was based on the Bankruptcy Court's credibility determination of the witnesses before it and this Court finds no clear error in those factual findings.

## ORDER

Based on the foregoing and being fully advised in the premises, the Court HEREBY ORDERS that the Bankruptcy Court's Memorandums of Decisions and Orders are **AFFIRMED**.

DATED: **May 5, 2010**




Honorable Edward J. Lodge
U. S. District Judge

---

[2] The Bankruptcy Court also addressed whether the Debtor had shown adequate assurance of future performance under § 365(b)(1)(C) later in its opinion. (Dkt. No. 326, p. 30, ER000752). The items included in this discussion include the expenditures necessary to meet the federal, state, and local regulations including environmental and MSHA requirements. (Dkt. No. 326, p. 30, ER000752). In making this determination, the Bankruptcy Court realized the costs of operating the Mine could be $250,000.00 per month but noted that the Debtor's submitted budget estimated such costs to be $191,844.29 per month. (Dkt. No. 326, P. 31, ER000753). The Bankruptcy Court concluded the Debtor had made sufficient assurances that the Lease will be performed with these costs given the testimony regarding the post-petition financing that Debtor had secured. (Dkt. No. 326, P. 31, ER000753). These future costs of compliance with environmental laws and regulations if Debtor is allowed to assume the Lease are all properly future performance amounts properly considered by the Bankruptcy Court under § 365(b)(1)(C).

**MEMORANDUM ORDER** - Page  16
10orders/sunshine_bk.wpd